UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WAM SINGAPORE PRIVATE LIMITED,

                       Plaintiff,

    - against -

BALAJI COKE INDUSTRY PVT. LTD.,

                      Defendant.

-----------------------------------------------------------------X

08 Civ.

08 Civ.

ECF CASE

RECEIVED
JAN 03 2008
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, WAM SINGAPORE PRIVATE LIMITED ("Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, BALAJI COKE INDUSTRY PVT. LTD. (hereinafter referred to as "Defendant")

alleges, upon information and belief, as follows:

    1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with a principal place of

business in Singapore.

    3.      Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law with a principal place of business

in India.

4.      By charter parties and contracts of affreightment entered into in March, April, July, and August 2005, Plaintiff, as the owner, voyage-chartered a number of vessels to Defendant, as the charterer, for the carriage of bulk coking coal from Australia or U.S.A. to India.

5.      In the performance of the aforesaid voyages, there accrued charges for net freight and demurrage for the following vessels: (1) LAKE TEGA/contract date March 4, 2005; (2) AMADEUS/contract date April 20, 2005; (3) SEA VENUS/contract date March 24, 2005; and (4) PACIFIC PRIMATE/contract date July 26, 2005. While Defendant effected partial payment to Plaintiff, in breach of the contracts Defendant failed to pay the balance owing to Plaintiff despite due demand.

6.      Pursuant to the parties' contracts, all disputes were to be submitted to arbitration in London with English Law to apply. Plaintiff duly submitted its claims to arbitration and has obtained a Partial Arbitration Award dated February 5, 2007 in its favor as against Defendant. *See Arbitration Award dated February 5, 2007 attached as Exhibit 1.* Defendant has failed to pay any part of the arbitration award.

7.      To date Plaintiff has been awarded the following amounts in the London arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $623,387.25; |
| B. | Attorneys' fees of £9,725.00: | $19,203.17; |
| C. | Interest on principal claim and attorneys' fees at 7% compounded quarterly from August 23, 2006 through date of payment (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $148,720.69; |
| D. | Arbitrator's fees of £2,400: | $4,740.02 |
| E. | Interest on arbitrator's fees at 7.25% compounded | |

2

> quarterly from February 5, 2007 through date of
> reimbursement by Defendant (Plaintiff estimates
> date of enforcement/payment will be August 23, 2009):    $906.40

**Total:**                                                    **$796,957.53.**

7.    The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of one or more garnishees which are believed to be due and owing to the

Defendant.

8.    The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States

Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and

to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in

accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels,

credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any

other funds held by any garnishee within the District which are due and owing to the Defendant,

in the amount of **$796,957.53** calculated to date to secure the Plaintiff's claims, and that all

persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Complaint;

     D.     That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court

     E.     That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

     F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

     G.     That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: January 3, 2008
     New York, NY

               The Plaintiff,
               WAM SINGAPORE PRIVATE LIMITED

               By: _____

               Nancy R. Siegel
               Charles E. Murphy
               LENNON, MURPHY & LENNON, LLC
               420 Lexington Ave., Suite 300
               New York, NY 10170
               (212) 490-6050 – phone
               (212) 490-6070 – fax
               cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York   )
                 )   ss.:   New York City
County of New York   )

1.     My name is Nancy R. Siegel.

2.     I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.     The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.     The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     January 3, 2007
             New York, NY

                             _____
                             Nancy R. Siegel

**EXHIBIT 1**

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

<u>BETWEEN:-</u>

WAM SINGAPORE PRIVATE LIMITED of Singapore

Claimant<br>(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of Kolkatta

Respondent<br>(Charterers)

<u>"LAKE TEGA" – Charterparty dated 4th March 2005</u><br>
<u>"AMADEUS" – Charterparty dated 20th April 2005</u><br>
<u>"PACIFIC PRIMATE" – Charterparty dated 26th July 2005</u><br>
<u>Contract of Affreightment dated 24th March 2005 ("SEA VENUS")</u>

PARTIAL ARBITRATION AWARD

WHEREAS:

1.   By four contracts dated as above and substantially in the form of the Americanised Welsh Coal charter 1979 printed form, as amended, ("the contracts"), the four vessels referred to above were chartered by the Claimant ("the Owners") to the Respondent ("the Charterers") for the carriage of coking coal from Australia to Indian on terms and conditions more particularly set out in each of the contracts, the vessel, "SEA VENUS", being nominated for the first lifting pursuant to the contract of

– 2 –

affreightment dated 24th March 2005.

2.    Clause 5 of each of the contracts provided:-

> "*If any dispute or difference should arise under this Charter, same to be referred to three parties in the City of London, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision or that of any of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court. Said three parties to be commercial men who are members of the Institute of Arbitrators in London.*"

Paragraphs 28 and 29 of the fixture recapitulation message for the "LAKE TEGA" which (was used as a pro-forma for the other charterparties) provided:-

> "*28.    This negotiation/trade to be made in accordance with English law, English law to apply.*
>
> *29.    Arbitration at London as English law.*"

3.    Disputes arose as detailed hereafter for the determination of which the Owners, through their London solicitors, on 31st January 2006, appointed me, the undersigned Christopher J W Moss of 4 Charlotte Place, Wilton Road, London SW1V 1DP as the arbitrator nominated by them under each of the contracts and called upon the Charterers by a message under each contract sent on 1st February 2006 to appoint an arbitrator within 14 days of receipt of that notice.

4.    No response was received from or on behalf of the Charterers to this message. A further message was sent to the Charterers on 30th March referring to my appointment and giving notice under Section 17(1) of the English Arbitration Act

- 3 -

1996 that the Owners proposed to appoint me as sole arbitrator if, within seven clear days of receipt of the notice, the Charterers did not appoint an arbitrator and notify the Owners that they had done so.

5.    No response was received from or on behalf of the Charterers to the notice served on 30th March. Accordingly, on 13th June 2006, the Owners requested me to accept appointment as sole arbitrator by default pursuant to the provisions of Section 17 of the English Arbitration Act 1996 and I confirmed by a fax message of the following day, 14th June 2006, that I was accepting this appointment.

6.    Claim submissions with supporting documents were served by the Owners' solicitors on 19th June 2006. Although the claims arose under four different contracts, the Owners' solicitors treated them as a single reference to arbitration and this approach was followed by the Charterers in subsequent negotiations. I therefore also followed this informal agreement to consolidate the disputes.

7.    The Owners claimed a balance of freight and demurrage under the four contracts in the total sum of US$833,211.25, net of dispatch which they accepted was due under a further charterparty relating to the vessel "PLACID SEA" in the sum of US$107,610.45. The sums claimed in respect of the four vessels were as follows:-

"LAKE TEGA" – US$113,826.56

"AMADEUS" – US$148,163.24

"SEA VENUS" – US$280,678.98

"PACIFIC PRIMATE" – US$398,152.92

The Owners also claimed interest and costs.

- 4 -

8.  In their claim submissions the Owners maintained that the Charterers had never disputed liability or asserted any defence to the claims put forward.

9.  In response to the claim submissions served on behalf of the Owners I made an Order in the following terms on 21st June 2006:-

> "May I acknowledge receipt of the letter from Mays Brown Solicitors of 19th June with Claim submissions in these arbitrations on behalf of the Owners, WAM Singapore Private Ltd.
>
> I trust that Balaji Coke Industry Pvt and/or their lawyers have now received copies of the Claim submissions and supporting documents.
>
> In the final paragraph of their letter of 19th June Mays Brown state that they await Charterers' confirmation that Defence submissions will be served within the usual period of 28 days.
>
> I should perhaps explain to Balaji and/or their lawyers – if they are not already aware of this fact – that it is customary in maritime arbitrations in London to expect Defence and Counterclaim submissions to be served within 28 days of receipt of Claim submissions. This is part of the LMAA recommended procedure. If Balaji or their lawyers are unfamiliar with any details of the LMAA procedure, may I draw their attention to the fact that the procedure and other helpful information can be found on the LMAA website at www.lmaa.org.uk.
>
> On the assumption that the Claim submissions and supporting documents in the hands of the Respondents and their lawyers, it seems to me that it should be possible for submissions by way of Defence (and

-5-

submissions in support of any Counterclaim) to be served by no later than 21st July.

I therefore now make an Order to that effect.

If there is any difficulty in complying with this time limit, could I request Sinha & Company (or Balaji) to let me know as soon as possible so that the position may be reviewed. May I also mention that any exchanges with me should also be copied to Mays Brown Solicitors so that we all remain on the same wavelength.

I wait to hear from Balaji or Sinha & Company with Defence submissions."

10. No response was received from or on behalf of the Charterers to the Order made on 21st June. On 27th July the Owners' solicitors informed me that they had heard nothing further from the Charterers save that a further payment of US$25,000.00 had been made. They provided me with a copy of a message sent by the Charterers which stated as follows:-

*"With reference to the outstanding due to Owners, we would like to advise Owners that due to very bad coke market and therefore acute cash flow problem faced by us we were unable to make payments in time. However we are now making efforts to arrange remittance of USD25,000.00 in every alternative week starting from this week. Necessary steps for the process of foreign remittance shall be initiated today itself. Would also like to mention that once our cash flow situation improves we shall increase this amount in order to settle the outstanding as soon as possible.*

- 6 -

*Many thanks Owners for their co-operation shown so far."*

11.   On the basis of this message the Owners' solicitors submitted that it was clear that
      the Charterers did not dispute liability for the sum claimed. They applied for a Final
      and Peremptory Order for service of any submissions by way of defence and
      counterclaim on behalf of the Charterers, requesting me to attach to any Order made
      the sanction that if I did not hear from the Charterers by the date fixed, I would
      proceed to consider their application for a Partial Award on the basis that the sum
      claimed was clearly due and owing.

12.   On 7th August 2006 I made an Order in the following terms:-

      "I refer to Mays Brown's fax message of 27th July. On the basis of the
      assertion made by Owners that the sum paid is a fraction of the amount
      due, it seems to me that I must now press ahead with this arbitration.

      On 21st June I made an Order requiring Defence submissions (and
      submissions in support of any Counterclaim) to be served by no later
      than 21st July. I received no response to that message.

      In the circumstances it seems to me that it is appropriate for me now to
      make a Final and Peremptory Order for service of Points of Defence and
      Counterclaim as Mays Brown suggest.

      Would the parties please note therefore that I now make a Final and
      Peremptory Order that Balaji Coke Industry, as Charterers under the
      above charterparties, serve any submissions which they may wish to
      make by way of Defence to the Claim – and in support of any

-7-

Counterclaim — together with copies of all relevant documents by no later than close of business, 14th August.

Balaji Coke Industry Pvt Ltd must be fully aware that if I do not receive any submissions by 14th August I shall be bound to conclude that they wish to take no part in this arbitration. If I find myself in that position, I shall then go on to consider the submissions and documents put before me on behalf of the Owners and, if appropriate, then to proceed to an Award."

13. By an email dated 8th August I was informed by a Mr Paritosh Sinha, Advocate, (whose firm had apparently previously been acting on behalf of the Charterers) that he had no instructions from them.   He requested me to send all further correspondence directly to the Charterers.

14. I received email confirmation from the Owners on 13th August that a copy of my Final and Peremptory Order of 7th August had been passed through the broker channel to the Charterers.

15. On 15th August 2006 I was informed by the Owners' solicitors that their clients had agreed to allow the Charterers a further seven day extension for service of submissions in response to the application on the basis that if the extended time limit was not met, the same sanctions would apply as indicated in my Order.

16. On 21st December 2006 I received a fax message from the London solicitors, Zaiwalla & Co, who referred to the various contracts stating:-

*"We have at present no instructions from Balaji Coke Pvt Ltd in this matter but we will take instructions ... We should perhaps mention that we were this*

- 8 -

> *week instructed by Balaji Coke for another dispute involving Contract of Affreightment dated 24th March 2005 and we had yesterday sent the enclosed notice before arbitration to WAM Singapore.*
>
> *We are unable to say without further detailed instructions whether Balaji are in a position to plead equitable set-off for their damages claim under the "Nanfri" (1978) 2   Lloyds 132 for the damages for the breach by WAM Singapore for 24th March 2005 Contract of Affreightment by them ...   We would therefore respectively suggest that we be allowed to obtain our client's instructions before reverting to you."*

17.  By a fax message also sent on 21st December 2006 the Owners' solicitors referred to their application for a Partial Award and continued:-

> *"2.     The respondents did not serve points of defence because, instead, they entered into an agreement, a copy of which is attached, by which they, inter alia:-*
>
> > *Expressly and irrevocably admitted a total gross amount of US$890,877.70 as set out in the schedule thereto as due and owing by them to the claimants.*
> >
> > *Irrevocably accepted that they have no defence to the claimants' claim in the arbitration for the gross debt, costs and compound interest.*
> >
> > *Agreed a payment schedule in respect of those moneys.*

- 9 -

*Agreed to remit an amount of £9,725 in respect of legal fees and disbursements.*

3.  *Despite having expressly agreed that time is of the essence with regard to each and every one of the required payments, the respondents have failed to honour several of those payments. A copy of an email from our clients to the respondents dated 26 November 2006 is attached.*

4.  *Our clients now rely upon their rights under Paragraph 9 of the attached agreement so that the full gross debt is now be deemed immediately payable (with interest having accrued from the date that the sums in question fell due under the contracts) and our clients hereby immediately continue with the arbitration, rely upon the attached admissions and request the Tribunal kindly now to proceed to an award for the full outstanding gross debt (less instalments that have been received), plus compound interest thereon plus legal and arbitrators' costs with compound interest thereon.*

5.  *After allowance for payments that were received, the total gross debt still outstanding is US$623,387.25.*

6.  *With regard to legal costs, the claimants rely upon the agreement at Paragraph 6 of the attached for an immediate award of £9,725 but respectfully request the Tribunal also to order the respondents to reimburse the Tribunal's costs and we also request the Tribunal to retain jurisdiction to make a further award on costs in respect of further fees that may be incurred and interest thereon.*

7.  *The Claimants respectfully request a reasoned award.*

- 10 -

> 8.  *Since the Claim is admitted and indefensible, the tribunal is respectfully requested to Order that if the respondents wish to reply to this they must do so within 7 days."*

18.  · Attached to this message was a copy of an agreement dated 23rd August 2006  A copy of this agreement ("the Settlement Agreement") is attached hereto as "Annexure A".

19.  The assertion made on behalf of the Owners that the Charterers were in default of their obligations under the Settlement Agreement was not challenged by the Charterers.  Accordingly, I was satisfied that the Owners were entitled to exercise the rights conferred upon them by Clause 9 of the Settlement Agreement.  In particular, they were entitled under paragraph 9(a) to treat the full gross debt as immediately payable.  They were also entitled under paragraph 9(b) to take such steps as were appropriate to enforce their right to payment in the arbitration proceedings which had been stayed in accordance with the Settlement Agreement.

20.  The London solicitors instructed on behalf of the Charterers in December 2006 made it clear that they were instructed in relation only in relation to disputes arising under the contract of affreightment dated 24th March 2005.  They defined their involvement in the following terms:-

> "We are acting for Balaji Coke Industry Pvt Ltd in respect of a *totally seperate claim* of theirs for repudiation of the COA dated 24th March 2005 against WAM Singapore." [emphasis added]

Their position was that they had appointed an arbitrator in respect of their clients' claim for repudiatory breach of the COA and that he had been duly appointed as sole

- 11 -

arbitrator by default.    The Owners' solicitors took issue with this assertion, contending that it was clear that I had been appointed as sole arbitrator in relation to all disputes arising under the contract of affreightment dated 24th March 2005, as well as under the other contracts set out above.

21.    It is unnecessary for me to refer further to the issues arising out of the challenge to my jurisdiction in relation to the contract of affreightment save to say that the Charterers' solicitors did not dispute my jurisdiction to deal with *"disputes settled under the Settlement Agreement and nothing more."*.  I nevertheless thought that it was appropriate to allow them to take further instructions in case their clients had any further submissions to make in relation to the application for a Partial Award.

22.    I therefore made an Order on 17th January 2007 that any submissions by way of response to the application for a Partial Award under the settlement agreement be served by no later than close of business, 24th January 2007.

23.    Shortly after sending my message of 17th January I received a message from the Charterers' solicitors stating:-

        *"As we said before, we do not have papers to form a view concerning the disputes that were settled by the settlement agreement of August 2006."*

24.    The Owners' solicitors referred to the fact that Charterers' solicitors had previously confirmed that they were not instructed with regard to the application for a Partial Award under the contracts and urged me to proceed to an Award on the application promptly, since in their view the Charterers had already been given an ample opportunity to make submissions objecting to the application.

25.    Nevertheless, on 18th January 2007 I made an Order in the following terms:-

- 12 -

"I refer to Mays Brown's fax of 17th January.

Zaiwalla & Co kindly confirmed in their fax of 17th January that were not concerned with disputes settled by the Settlement Agreement of August 2006.

In the circumstances it seems to me that I must now consider the application for an Award pursuant to the terms of the Settlement Agreement.

Balaji Coke Industry Pvt Ltd have been kept fully aware of developments since the application for an Award was made in Mays Brown's fax of 21st December. I assume therefore that if they had wished to comment on the application, they would have done so by now.

However, for the avoidance of any possible misunderstanding, I confirm that I shall now consider the application and, if appropriate, proceed to an Award. If Balaji Coke Industry Pvt Ltd wish to make any further comments, would they please ensure that these are with me by no later than close of business, London, Monday 29th January."

26.    In a message from the Charterers' solicitors sent on 29th January 2007 they requested that they be allowed a further 14 days in which to respond to the application. The response from the Owners' solicitors was that since the claim was admitted in full in the settlement agreement, there could be no defence. On that basis they opposed the application.

- 13 -

27.    On 1ˢᵗ February 2007 I sent a message to the parties' solicitors informing them that I
       had considered the submissions carefully and concluded that it was not appropriate
       to grant a further extension of the time allowed for responding to the application for
       a Partial Award since it seemed to me to be clear that the matter had already been
       fully explored in the submissions served to date. I confirmed that I was therefore
       proceeding to an Award.

28.    In the circumstances and on the evidence set out above I was satisfied that there
       could be no defence to the application for a Partial Award in respect of the sum
       admitted to be due under the Settlement Agreement. The Owners were therefore
       entitled to the Award sought.

NOW I, the said Christopher J W Moss, having taken upon myself the burden of this
arbitration and having carefully and conscientiously considered the evidence put before me
and the submissions addressed to me, DO HEREBY MAKE, ISSUE AND PUBLISH this my
PARTIAL AWARD as follows:-

A.     I FIND, HOLD AND DECLARE that the sum of US$623,387.25 and the further sum
       of £9,725.00 in respect of legal costs are due and owing under the Settlement
       Agreement.

B.     I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to
       the Owners the sums of US$623,387.25 (six hundred and twenty-three thousand,
       three hundred and eighty-seven United States dollars and twenty-five cents) and
       £9,725.00 (nine thousand, seven hundred and twenty-five pounds Sterling) together
       with interest on both these sums at the rate of 7% per annum, compounded with
       three monthly rests from 23ʳᵈ August 2006 to the date of payment.

- 14 -

C.    I FURTHER AWARD AND ADJUDGE that the Charterers shall bear and pay their

own and the Owners' recoverable costs of the arbitration insofar as these relate to the

application for this my PARTIAL AWARD, including the costs of this my PARTIAL

AWARD in the sum of £2,400.00 (inclusive of my interlocutory fees and charges),

PROVIDED that if in the first instance, the Owners shall have paid any part of the

costs of this my PARTIAL AWARD, they shall be entitled to immediate

reimbursement by the Charterers of the sum so paid, together with interest on this

sum at the rate of 7.25% per annum from  the date of payment to the date of

reimbursement.

D.    I RESERVE jurisdiction to myself to make a further Award or Awards in respect of

all outstanding differences between the parties to this arbitration.

Given under my hand in London this 5th day of February 2007.

Sole Arbitrator

Witness

ANNEXURE A



पश्चिमबंग पश्चिम बंगाल WEST BENGAL                    10AA 470631

## AGREEMENT

THIS AGREEMENT IS MADE

BETWEEN

(1) WAM SINGAPORE PRIVATE LIMITED                          ("Owners")
    17 Phillip Street, # 05-01 Grand Building, Singapore 048695

and

(2) BALAJI COKE INDUSTRY PVT LIMITED                        ("Charterers")
    12 Ho-Chi-Minh Sarani, Flat No.2B, 2nd Floor, Kolkata 700071

WHEREAS

(a)  Owners entered into four separate contracts with Charterers as follows:
    (i)    "LAKE TEGA" CP dd. 04.03.05
    (ii)   "AMADEUS" CP dd. 20.04.05
    (iii)  "SEA VENUS" COA dated 24.03.05
    (iv)  "PACIFIC PRIMATE" CP dd. 26.07.05

Referred to hereafter collectively as "the Contracts".



1



CONTD.

Rs. & Mitra Adt

S. CHATTERJEE
Licensed Stamp Vendor
C. C. Court
9 & 2, K.S. Roy Road, Calcutta

2 3 AUG 2006

(b) As on 14th August 2006, Charterers owe Owners a total of US$ 890,877.70 under those contracts ("the gross debt"). Details appear in the attached schedule. After allowance for US$ 107,610.45 due to Charterers by Owners in respect of a fifth contract relating to the "Placid Sea" (which amount both sides hereby agree is the full extent of Owners' liability to Charterers under that contract), the net amount owed by Charterers to Owners is US$ 783,267.25 ("the net debt").

(c) Owners were forced to commence arbitration proceedings in London ("the Arbitration") before Christopher Moss, acting as Sole Arbitrator, in order to recover monies due to them under the Contracts.

(d) Charterers admit that all of the sums referred to in the attached are due and owing and the parties have agreed the following in relation to that debt.

In consideration for Owners agreeing to defer further progress of the arbitration on the following terms and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged by Charterers, the parties hereto have agreed the following:

1. Charterers hereby expressly and irrevocably admit that a total gross amount of US$ 890,877.70 (as more particularly set out in the schedule attached hereto) is due and owing by them to Owners under the Contracts and should have been paid some considerable time ago.

2. Charterers irrevocably accept that they have no defence to Owners' claim in the arbitration for the gross debt, costs and compound interest.

3. Charterers undertake to pay the net debt to Owners as follows:

   (a) US$ 40,000 (Forty Thousand United States Dollars) every 14 days, with the first payment being made before 18th Aug 2006, the second payment being made before 31st Aug 2006 and with all subsequent payments being made on the 1st and 15th of each calendar month commencing from 1st September 2006, with such payments continuing up until 15th March 2007 when a total of US$ 640,000 will have been paid.

   (b) Thereafter the balance amount of US$ 143,267.25 will be remitted by Charterers to Owners in three equal installments on the 1st of April, May and June 2007.




2

4.   Remittances are to be received by Owners into the following account, without deduction on the due date:

**WAM SINGAPORE PRIVATE LIMITED - BANKING DETAILS**

Remit To -
BANK OF NEW YORK, NEW YORK,
ABA ROUTING No. 0 2 1 0 0 0 0 1 8

For The Account Of -
DBS BANK, 6 SHENTON WAY, DBS BUILDING,
SINGAPORE 0 6 8 8 0 9.

Swift Address  D B S S S G S G
CHIPS UID NO.  0 3 4 6 7 5

For The Credit Of -
WAM SINGAPORE PRIVATE LIMITED.
Account No.  0 0 4 8 - 0 0 1 3 8 4 - 0 1 - 7.

5.   After receipt of the entirety of the net debt in strict accordance with the above terms, the arbitrator shall be advised that Owners' claim for the gross debt and their liability to Charterers under the "Placid Sea" contract have settled. The arbitrator will be invited to render a note of any outstanding fees to Charterers and Charterers shall pay the same in full within 7 days of receipt of the invoice.

6.   By the 15th June 2007, Charterers shall reimburse to Owners an amount of Sterling £9,725 in respect of Owners' legal fees and disbursements to date.

7.   Subject always to and for so long as there is <u>strict and timely</u> compliance with paragraphs 3 to 6 above (i) the London arbitration will be placed on hold and (ii) Owners will waive their right to seek interest.

8.   It is expressly agreed, however, that time is of the essence with regard to each and every one of the above required payments.

9.   In the event that any payment referred to at paragraphs 3 to 6 is not received, in full, in Owners' above account on the due date then it is expressly agreed that Owners shall have the right with regard to each instance of default to elect :

(a)   that the full gross debt shall be deemed immediately payable (with interest having accrued from the date that the sums in question fell due under the Contracts)



3



(b) Immediately to continue with the arbitration and rely upon the admissions set out herein so that Charterers hereby accept that the arbitrator will be entitled without more to produce an award for the full outstanding gross debt (less any installments that have been received by the date of the award) plus compound interest thereon plus legal and arbitrators' costs and compound interest thereon.

10. This Agreement is subject to English Law and since the matters governed by this Agreement concern disputes and differences arising/having arisen under the above Contracts, any disputes hereunder or in connection herewith shall be referred to the Tribunal appointed under those Contracts (presently Christopher J W Moss as Sole Arbitrator) or, in the event that he is unable or unwilling to determine the same, to an alternative arbitrator to be agreed between the parties and, in the event that they cannot agree within 14 days of notice from one party to the other requiring them so to do, to be appointed by the president of the time being of the LMAA.

Signed for and on behalf of
**WAM SINGAPORE PRIVATE LIMITED OF SINGAPORE**

CAPT. S. KAPUR
JGM (COMMERCIAL)
Dated: 14TH Aug 2006.

Signed for and on behalf of
**BALAJI COKE INDUSTRY PVT. LIMITED, KOLKATA**
For Balaji Coke Industry Pvt. Ltd.

Administrative Executive

Dated: 14.08.06.

4

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

WAM SINGAPORE PRIVATE LIMITED of
Singapore

Claimant
(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of
Kolkatta

Respondent
(Charterers)

"LAKE TEGA" – Charterparty dated 4th March 2005
"AMADEUS" – Charterparty dated 20th April 2005
"PACIFIC PRIMATE" – Charterparty dated 26th July 2005
Contract of Affreightment dated 24th March 2005 ("SEA VENUS")

PARTIAL ARBITRATION AWARD