UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WAM SINGAPORE PRIVATE LIMITED,                  :
                                                :
                              Plaintiff,         :        08 Civ. 0044(VM)
                                                :
          - against -                            :        ECF CASE
                                                :
BALAJI COKE INDUSTRY PVT. LTD.,                  :
                                                :
                              Defendant.         :
------------------------------------------------------------------------X

**AFFIDAVIT OF COLEEN A. MCEVOY IN SUPPORT OF MOTION
TO RECOGNIZE, CONFIRM AND ENFORCE ARBITRATION AWARD
AND ENTER DEFAULT JUDGMENT AGAINST DEFENDANT**

STATE OF CONNECTICUT )
                     )   ss:    SOUTHPORT
COUNTY OF FAIRFIELD  )

          Coleen A. McEvoy, being duly sworn, deposes and says:

          1.      I am a member of the Bar of this Court and am an attorney with the firm of

Lennon, Murphy & Murphy, LLC, attorneys for the Plaintiff, WAM SINGAPORE PRIVATE

LIMITED, (hereinafter "Plaintiff"), in the above-entitled action and I am familiar with the facts

and circumstances of this action.

          2.      I make this affidavit pursuant to Rule 55.1 and 55.2(a) of the Civil Rules for the

Southern District of New York, and Rule B(1) of the Supplemental Rules for Certain Admiralty

and Maritime Claims.

          3.      Plaintiff requests that this Court grant its Motion for Default Judgment against

BALAJI COKE INDUSTRY PVT. LTD. (hereinafter "Defendant") as it has been given due and

proper notice of all proceedings against it yet have failed to timely appear or otherwise defend in

the action.

4.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and existing under foreign law.  Plaintiff was at all material times the Owner of the motor vessels (1) LAKE TEGA/contract date March 4, 2005; (2) AMADEUS/contract date April 20, 2005; (3) SEA VENUS/contract date March 24, 2005; and (4) PACIFIC PRIMATE/contract date July 26, 2005 (hereinafter the "Vessels").

5.      Upon information and belief, Defendant was and still is a foreign corporation, or other business entity, organized and operating under foreign law and was, at all material times, the charterer of the Vessels.

6.      By charter parties dated March 4, 2005, April 20, 2005, March 24, 2005, and July 26, 2005, Plaintiff chartered the Vessels to Defendant.

7.      While Defendant effected partial payment to Plaintiff, in breach of the contracts, Defendant failed to pay the balance owing to Plaintiff despite due demand.

8.      Pursuant to the parties' contracts, all disputes were to be submitted to arbitration in London with English Law to apply.  Plaintiff duly submitted its claims to arbitration and has obtained a Partial Arbitration Award dated February 5, 2007 in its favor as against Defendant. *See Partial Arbitration Award dated February 5, 2007 annexed hereto as Exhibit 1.*  Defendant has failed to pay any part of the arbitration award.

9.      In the Partial Arbitration Award, the arbitrators directed Defendant Balaji to pay the Plaintiff the sum of $623,387.25 and £9,725.00 which is approximately $18,186.24, together with interest at the rate of 7% per annum, compounded quarterly, from August 23, 2006 until the date of payment.

10    Furthermore, Defendant Balaji was directed to pay the cost of the Partial

Arbitration Award. The arbitrators assessed the cost of the Partial Arbitration Award in the

amount of £2,400.00 which is approximately $4,488.60, together with interest at the rate of

7.25% per annum, compounded quarterly, from February 5, 2007 until the date of payment.

11.    To date Plaintiff has been awarded the following amounts in the London

arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $623,387.25; |
| B. | Attorneys' fees of £9,725.00: | $18,186.24; |
| C. | Interest on principal claim and attorneys' fees at 7% compounded quarterly from August 23, 2006 through date of payment (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $148,635.55; |
| D. | Arbitrator's fees of £2,400: | $4,488.60 |
| E. | Interest on arbitrator's fees at 7.25% compounded quarterly from February 5, 2007 through date of reimbursement by Defendant (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $901.72 |
| **Total:** | | **$795,599.36** |

12.    This action was commenced on January 3, 2008 by the filing of a Verified

Complaint that included a prayer for an Ex-Parte Order for Process of Maritime Attachment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and

the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8. *See Verified Complaint annexed hereto as

Exhibit "2."*

13.    On the same day, the Court issued an Ex-Parte Order of Maritime Attachment and

Garnishment. The Ex-Parte Order authorized the Plaintiff to attach Defendants' property up to

the sum of **$796,957.51**[1], located within this judicial district and belonging to the Defendant. *See Ex-Parte Order annexed hereto as Exhibit "3."*

14.    The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendant. The Ex-Parte Order and PMAG were served upon the garnishee banks. *See PMAG annexed hereto as Exhibit "4".*

15.    Pursuant to the Ex-Parte Order and PMAG, Defendants' funds are being restrained in the total amount of $225,000.00.

16.    Particularly, Defendant's property was attached at Standard Chartered Bank in the sum of $50,000.00 on or about February 5, 2008 and American Express Bank in the sum of $175,000.00 on or about February 20, 2008.

17.    Defendant was given due notice of the instant action before this Court.

18.    On February 13, 2008, Defendant was advised by letter, sent by International Registered Mail, Return Receipt, that that an order of maritime attachment had been obtained on Plaintiff's behalf authorizing attachment in New York of any of Defendants' assets. *See Letter dated February 13, 2008 annexed hereto as Exhibit "5"*

19.    The letter notified Defendant that Plaintiff had successfully attached monies at American Express Bank in the sum of $50,000.00.

20.    All pleadings filed in the instant action, including the Summons and Complaint, were sent to the Defendant with this letter. The Return Receipt confirmed that the letter was received by Defendant on February 23, 2008. *See Affidavit of Service attached hereto as Exhibit "6."*

---

[1] The amount of the Ex Parte Order is greater than the amount requested herein, due to the exchange rates being updated since the time of the filing of the Verified Complaint.

21.    On February 20, 2008, Defendant was further notified that Plaintiff had successfully attached monies at Standard Chartered Bank in the sum of $175,000.00. *See Letter dated February 20, 2008 annexed hereto as Exhibit "7"*

22.    Despite the notices provided, Defendant failed to appear in this action or file a responsive pleading.

23.    In its Verified Complaint, Plaintiff prayed for the issuance of Process of Maritime Attachment and Garnishment as well as an order from this court recognizing, confirming and enforcing the London arbitration award(s) in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

24.    In addition, Plaintiff prayed for such other, further and different relief as the Court may deem just and proper. *See Exhibit "2."*

25.    "In Federal Practice, a defendant having been served with process who fails to make timely appearance or answer is subject to judgment by default under Rule 55(a)." *See Danish Fur Breeders Association v. Olga Furs, Inc., Hatzis Bros*, 1990 U.S. Dist. LEXIS 4779, at 4 (S.D.N.Y 1990); *see also Fed. R. Civ. P. 55*; *see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95-96 (2d Cir. 1993).

26.    Defendant was given due notice of the instant action before this Court pursuant to Supplemental Admiralty Rule B(2)(b) as Plaintiff properly mailed to the Defendant the verified complaint, summons, and process of attachment using a form of delivery requiring return receipt. Rule B(2)(b) of the Supplemental Rules for Certain Admiralty & Maritime Claims provides as follows:

> (2) Notice to Defendant. No default judgment may be entered except upon proof-which may be by affidavit- that: (b) the plaintiff or the garnishee has mailed to the defendant the complaint, summons, and process of attachment or garnishment, using any form of mail requiring return receipt;

27.    As the requirements of Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims have been met, and Defendant has failed to make an appearance, Plaintiff is entitled to default judgment under Rule 55 of the Federal Rules of Civil Procedure.

28.    Defendant, a foreign corporation, is not in the military and is not an infant or incompetent.

29.    A proposed default judgment granting Plaintiff's Motion for Default Judgment, recognizing and confirming the Partial Arbitration Award pursuant to the New York convention, and granting Plaintiff's request for attorney's fees and costs is annexed hereto as *Exhibit "8."* No part of the judgment sought has been paid, other than as indicated herein.

30.    As Defendant has failed to appear in this action despite having been provided notice of this action pursuant to Supplemental Admiralty Rule B(2)(b), Plaintiff is entitled to partial default judgment and an order recognizing and confirming the Final Arbitration Award pursuant to the New York Convention.

31.    Defendant has defaulted and has otherwise failed to pay the amounts due and owing under the binding arbitration award. *See Certificate of Default annexed hereto as Exhibit "9."*

32.    Plaintiff has incurred attorney's fees and costs in the approximate amount of $12,700.00 in obtaining/maintaining the Rule B attachment, making the instant application to confirm the London arbitration awards and seeking the entry of default.

33.    Plaintiff expects to incur an additional $900.00 in attorney's fees and costs to confirm the awards, obtain default judgment and execute upon the funds restrained in New York. *See Statement of Damages annexed hereto as Exhibit "10."*

34.    Plaintiff respectfully requests that the Partial Arbitration Award be duly recognized, confirmed and enforced, that judgment be rendered in its favor and against the Defendant as a partial final judgment against Defendant in the total sum of **$808,199.36**, and that the garnishee banks be directed to turn over Defendant's funds in the amount of **$225,000.00** to Plaintiff's counsel or at Plaintiff's counsel's direction. *See Proposed Order Directing Default Judgment annexed hereto as Exhibit "8" and Turn Over Order annexed hereto as Exhibit "11".*

35.    If an agreement cannot be reached between the parties, Plaintiff intends to seek a further award of costs in the London arbitration or in the English High Court of Justice, as provided for in the Partial Arbitration Award. Plaintiff respectfully requests that this court retain jurisdiction over the recognition, confirmation and enforcement of such award of costs. *See Exhibit 1.*

Dated: New York, NY
       August 25, 2008

_____
Coleen A. McEvoy

Sworn and subscribed to before me
this 25th day of August, 2008

_____
Notary Public

7

## **AFFIRMATION OF SERVICE**

I hereby certify that on August 25, 2008, a copy of the foregoing will be filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by express courier to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Service of the foregoing is being made on Defendant via express courier

_____
Coleen A. McEvoy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
WAM SINGAPORE PRIVATE LIMITED,       :
                                            :
                     Plaintiff,           :         08 Civ. 0044(VM)
                                            :
      - against -                  :         ECF CASE
                                          :
BALAJI COKE INDUSTRY PVT. LTD.,       :
                                          :
                  Defendant.      :
-----------------------------------------------------------------------X

**AFFIDAVIT OF COLEEN A. MCEVOY IN SUPPORT OF MOTION
TO RECOGNIZE, CONFIRM AND ENFORCE ARBITRATION AWARD
AND ENTER DEFAULT JUDGMENT AGAINST DEFENDANT**

STATE OF CONNECTICUT)
                 )    ss:    SOUTHPORT
COUNTY OF FAIRFIELD   )

      Coleen A. McEvoy, being duly sworn, deposes and says:

      1.      I am a member of the Bar of this Court and am an attorney with the firm of

Lennon, Murphy & Murphy, LLC, attorneys for the Plaintiff, WAM SINGAPORE PRIVATE

LIMITED, (hereinafter "Plaintiff"), in the above-entitled action and I am familiar with the facts

and circumstances of this action.

      2.      I make this affidavit pursuant to Rule 55.1 and 55.2(a) of the Civil Rules for the

Southern District of New York, and Rule B(1) of the Supplemental Rules for Certain Admiralty

and Maritime Claims.

      3.      Plaintiff requests that this Court grant its Motion for Default Judgment against

BALAJI COKE INDUSTRY PVT. LTD. (hereinafter "Defendant") as it has been given due and

proper notice of all proceedings against it yet have failed to timely appear or otherwise defend in

the action.

4.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and existing under foreign law.  Plaintiff was at all material times the Owner of the motor vessels (1) LAKE TEGA/contract date March 4, 2005; (2) AMADEUS/contract date April 20, 2005; (3) SEA VENUS/contract date March 24, 2005; and (4) PACIFIC PRIMATE/contract date July 26, 2005 (hereinafter the "Vessels").

5.      Upon information and belief, Defendant was and still is a foreign corporation, or other business entity, organized and operating under foreign law and was, at all material times, the charterer of the Vessels.

6.      By charter parties dated March 4, 2005, April 20, 2005, March 24, 2005, and July 26, 2005, Plaintiff chartered the Vessels to Defendant.

7.      While Defendant effected partial payment to Plaintiff, in breach of the contracts, Defendant failed to pay the balance owing to Plaintiff despite due demand.

8.      Pursuant to the parties' contracts, all disputes were to be submitted to arbitration in London with English Law to apply.  Plaintiff duly submitted its claims to arbitration and has obtained a Partial Arbitration Award dated February 5, 2007 in its favor as against Defendant. *See Partial Arbitration Award dated February 5, 2007 annexed hereto as Exhibit 1.*  Defendant has failed to pay any part of the arbitration award.

9.      In the Partial Arbitration Award, the arbitrators directed Defendant Balaji to pay the Plaintiff the sum of $623,387.25 and £9,725.00 which is approximately $18,186.24, together with interest at the rate of 7% per annum, compounded quarterly, from August 23, 2006 until the date of payment.

10    Furthermore, Defendant Balaji was directed to pay the cost of the Partial

Arbitration Award. The arbitrators assessed the cost of the Partial Arbitration Award in the

amount of £2,400.00 which is approximately $4,488.60, together with interest at the rate of

7.25% per annum, compounded quarterly, from February 5, 2007 until the date of payment.

11.    To date Plaintiff has been awarded the following amounts in the London

arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $623,387.25; |
| B. | Attorneys' fees of £9,725.00: | $18,186.24; |
| C. | Interest on principal claim and attorneys' fees at 7% compounded quarterly from August 23, 2006 through date of payment (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $148,635.55; |
| D. | Arbitrator's fees of £2,400: | $4,488.60 |
| E. | Interest on arbitrator's fees at 7.25% compounded quarterly from February 5, 2007 through date of reimbursement by Defendant (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $901.72 |
| **Total:** | | **$795,599.36** |

12.    This action was commenced on January 3, 2008 by the filing of a Verified

Complaint that included a prayer for an Ex-Parte Order for Process of Maritime Attachment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and

the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8. *See Verified Complaint annexed hereto as

Exhibit "2."*

13.    On the same day, the Court issued an Ex-Parte Order of Maritime Attachment and

Garnishment. The Ex-Parte Order authorized the Plaintiff to attach Defendants' property up to

the sum of **$796,957.51**[1], located within this judicial district and belonging to the Defendant. *See Ex-Parte Order annexed hereto as Exhibit "3."*

14.    The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendant. The Ex-Parte Order and PMAG were served upon the garnishee banks. *See PMAG annexed hereto as Exhibit "4".*

15.    Pursuant to the Ex-Parte Order and PMAG, Defendants' funds are being restrained in the total amount of $225,000.00.

16.    Particularly, Defendant's property was attached at Standard Chartered Bank in the sum of $50,000.00 on or about February 5, 2008 and American Express Bank in the sum of $175,000.00 on or about February 20, 2008.

17.    Defendant was given due notice of the instant action before this Court.

18.    On February 13, 2008, Defendant was advised by letter, sent by International Registered Mail, Return Receipt, that that an order of maritime attachment had been obtained on Plaintiff's behalf authorizing attachment in New York of any of Defendants' assets. *See Letter dated February 13, 2008 annexed hereto as Exhibit "5"*

19.    The letter notified Defendant that Plaintiff had successfully attached monies at American Express Bank in the sum of $50,000.00.

20.    All pleadings filed in the instant action, including the Summons and Complaint, were sent to the Defendant with this letter. The Return Receipt confirmed that the letter was received by Defendant on February 23, 2008. *See Affidavit of Service attached hereto as Exhibit "6."*

---

[1] The amount of the Ex Parte Order is greater than the amount requested herein, due to the exchange rates being updated since the time of the filing of the Verified Complaint.

21.    On February 20, 2008, Defendant was further notified that Plaintiff had successfully attached monies at Standard Chartered Bank in the sum of $175,000.00. *See Letter dated February 20, 2008 annexed hereto as Exhibit "7"*

22.    Despite the notices provided, Defendant failed to appear in this action or file a responsive pleading.

23.    In its Verified Complaint, Plaintiff prayed for the issuance of Process of Maritime Attachment and Garnishment as well as an order from this court recognizing, confirming and enforcing the London arbitration award(s) in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

24.    In addition, Plaintiff prayed for such other, further and different relief as the Court may deem just and proper. *See Exhibit "2."*

25.    "In Federal Practice, a defendant having been served with process who fails to make timely appearance or answer is subject to judgment by default under Rule 55(a)." *See Danish Fur Breeders Association v. Olga Furs, Inc., Hatzis Bros*, 1990 U.S. Dist. LEXIS 4779, at 4 (S.D.N.Y 1990); *see also Fed. R. Civ. P. 55; see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95-96 (2d Cir. 1993).

26.    Defendant was given due notice of the instant action before this Court pursuant to Supplemental Admiralty Rule B(2)(b) as Plaintiff properly mailed to the Defendant the verified complaint, summons, and process of attachment using a form of delivery requiring return receipt. Rule B(2)(b) of the Supplemental Rules for Certain Admiralty & Maritime Claims provides as follows:

> (2) Notice to Defendant. No default judgment may be entered except upon proof-which may be by affidavit- that: (b) the plaintiff or the garnishee has mailed to the defendant the complaint, summons, and process of attachment or garnishment, using any form of mail requiring return receipt;

27.    As the requirements of Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims have been met, and Defendant has failed to make an appearance, Plaintiff is entitled to default judgment under Rule 55 of the Federal Rules of Civil Procedure.

28.    Defendant, a foreign corporation, is not in the military and is not an infant or incompetent.

29.    A proposed default judgment granting Plaintiff's Motion for Default Judgment, recognizing and confirming the Partial Arbitration Award pursuant to the New York convention, and granting Plaintiff's request for attorney's fees and costs is annexed hereto as *Exhibit "8."* No part of the judgment sought has been paid, other than as indicated herein.

30.    As Defendant has failed to appear in this action despite having been provided notice of this action pursuant to Supplemental Admiralty Rule B(2)(b), Plaintiff is entitled to partial default judgment and an order recognizing and confirming the Final Arbitration Award pursuant to the New York Convention.

31.    Defendant has defaulted and has otherwise failed to pay the amounts due and owing under the binding arbitration award. *See Certificate of Default annexed hereto as Exhibit "9."*

32.    Plaintiff has incurred attorney's fees and costs in the approximate amount of $12,700.00 in obtaining/maintaining the Rule B attachment, making the instant application to confirm the London arbitration awards and seeking the entry of default.

33.    Plaintiff expects to incur an additional $900.00 in attorney's fees and costs to confirm the awards, obtain default judgment and execute upon the funds restrained in New York. *See Statement of Damages annexed hereto as Exhibit "10."*

34.    Plaintiff respectfully requests that the Partial Arbitration Award be duly recognized, confirmed and enforced, that judgment be rendered in its favor and against the Defendant as a partial final judgment against Defendant in the total sum of **$808,199.36**, and that the garnishee banks be directed to turn over Defendant's funds in the amount of **$225,000.00** to Plaintiff's counsel or at Plaintiff's counsel's direction. *See Proposed Order Directing Default Judgment annexed hereto as Exhibit "8" and Turn Over Order annexed hereto as Exhibit "11"*.

35.    If an agreement cannot be reached between the parties, Plaintiff intends to seek a further award of costs in the London arbitration or in the English High Court of Justice, as provided for in the Partial Arbitration Award. Plaintiff respectfully requests that this court retain jurisdiction over the recognition, confirmation and enforcement of such award of costs. *See Exhibit 1.*

Dated: New York, NY
       August 25, 2008

_____
Coleen A. McEvoy

Sworn and subscribed to before me
this 25th day of August, 2008

_____
Notary Public

## **AFFIRMATION OF SERVICE**

I hereby certify that on August 25, 2008, a copy of the foregoing will be filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by express courier to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Service of the foregoing is being made on Defendant via express courier

_____
Coleen A. McEvoy

8

# EXHIBIT 1

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

WAM SINGAPORE PRIVATE LIMITED of Singapore

Claimant
(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of Kolkatta

Respondent
(Charterers)

"LAKE TEGA" -- Charterparty dated 4th March 2005
"AMADEUS" – Charterparty dated 20th April 2005
"PACIFIC PRIMATE" – Charterparty dated 26th July 2005
Contract of Affreightment dated 24th March 2005 ("SEA VENUS")

————————————————

PARTIAL ARBITRATION AWARD

————————————————

WHEREAS:

1.     By four contracts dated as above and substantially in the form of the Americanised
       Welsh Coal charter 1979 printed form, as amended, ("the contracts"), the four vessels
       referred to above were chartered by the Claimant ("the Owners") to the Respondent
       ("the Charterers") for the carriage of coking coal from Australia to Indian on terms
       and conditions more particularly set out in each of the contracts, the vessel, "SEA
       VENUS", being nominated for the first lifting pursuant to the contract of

- 2 -

affreightment dated 24th March 2005.

2.    Clause 5 of each of the contracts provided:-

> "If any dispute or difference  should arise under this Charter, same to be
> referred to three parties in the City of London, one to be appointed by each of the
> parties hereto, the third by the two so chosen, and their decision or that of any of
> them, shall be final and binding, and this agreement may, for enforcing the
> same, be made a rule of Court. Said three parties to be commercial men who are
> members of the Institute of Arbitrators in London."

Paragraphs 28 and 29 of the fixture recapitulation message for the "LAKE TEGA"
which (was used as a pro-forma for the other charterparties) provided:-

> "28.    This negotiation/trade to be made in accordance with English law,
>          English law to apply.
>
> 29.    Arbitration at London as English law."

3.    Disputes arose as detailed hereafter for the determination of which the Owners,
through their London solicitors, on 31st January 2006, appointed me, the undersigned
Christopher J W Moss of 4 Charlotte Place, Wilton Road, London SW1V 1DP as the
arbitrator nominated by them under each of the contracts and called upon the
Charterers by a message under each contract sent on 1st February 2006 to appoint an
arbitrator within 14 days of receipt of that notice.

4.    No response was received from or on behalf of the Charterers to this message. A
further message was sent to the Charterers on 30th March referring to my
appointment and giving notice under Section 17(1) of the English Arbitration Act

- 3 -

1996 that the Owners proposed to appoint me as sole arbitrator if, within seven clear days of receipt of the notice, the Charterers did not appoint an arbitrator and notify the Owners that they had done so.

5.     No response was received from or on behalf of the Charterers to the notice served on 30th March. Accordingly, on 13th June 2006, the Owners requested me to accept appointment as sole arbitrator by default pursuant to the provisions of Section 17 of the English Arbitration Act 1996 and I confirmed by a fax message of the following day, 14th June 2006, that I was accepting this appointment.

6.     Claim submissions with supporting documents were served by the Owners' solicitors on 19th June 2006. Although the claims arose under four different contracts, the Owners' solicitors treated them as a single reference to arbitration and this approach was followed by the Charterers in subsequent negotiations. I therefore also followed this informal agreement to consolidate the disputes.

7.     The Owners claimed a balance of freight and demurrage under the four contracts in the total sum of US$833,211.25, net of dispatch which they accepted was due under a further charterparty relating to the vessel "PLACID SEA" in the sum of US$107,610.45. The sums claimed in respect of the four vessels were as follows:-

          "LAKE TEGA" – US$113,826.56
          "AMADEUS" – US$148,163.24
          "SEA VENUS" – US$280,678.98
          "PACIFIC PRIMATE" – US$398,152.92

The Owners also claimed interest and costs.

- 4 -

8.    In their claim submissions the Owners maintained that the Charterers had never disputed liability or asserted any defence to the claims put forward.

9.    In response to the claim submissions served on behalf of the Owners I made an Order in the following terms on 21ˢᵗ June 2006:-

> "May I acknowledge receipt of the letter from Mays Brown Solicitors of 19ᵗʰ June with Claim submissions in these arbitrations on behalf of the Owners, WAM Singapore Private Ltd.
>
> I trust that Balaji Coke Industry Pvt and/or their lawyers have now received copies of the Claim submissions and supporting documents.
>
> In the final paragraph of their letter of 19ᵗʰ June Mays Brown state that they await Charterers' confirmation that Defence submissions will be served within the usual period of 28 days.
>
> I should perhaps explain to Balaji and/or their lawyers – if they are not already aware of this fact – that it is customary in maritime arbitrations in London to expect Defence and Counterclaim submissions to be served within 28 days of receipt of Claim submissions.  This is part of the LMAA recommended procedure.  If Balaji or their lawyers are unfamiliar with any details of the LMAA procedure, may I draw their attention to the fact that the procedure and other helpful information can be found on the LMAA website at www.lmaa.org.uk.
>
> On the assumption that the Claim submissions and supporting documents in the hands of the Respondents and their lawyers, it seems to me that it should be possible for submissions by way of Defence (and

-5-

submissions in support of any Counterclaim) to be served by no later than 21st July.

I therefore now make an Order to that effect.

If there is any difficulty in complying with this time limit, could I request Sinha & Company (or Balaji) to let me know as soon as possible so that the position may be reviewed. May I also mention that any exchanges with me should also be copied to Mays Brown Solicitors so that we all remain on the same wavelength.

I wait to hear from Balaji or Sinha & Company with Defence submissions."

10.    No response was received from or on behalf of the Charterers to the Order made on 21st June. On 27th July the Owners' solicitors informed me that they had heard nothing further from the Charterers save that a further payment of US$25,000.00 had been made. They provided me with a copy of a message sent by the Charterers which stated as follows:-

*"With reference to the outstanding due to Owners, we would like to advise Owners that due to very bad coke market and therefore acute cash flow problem faced by us we were unable to make payments in time. However we are now making efforts to arrange remittance of USD25,000.00 in every alternative week starting from this week. Necessary steps for the process of foreign remittance shall be initiated today itself. Would also like to mention that once our cash flow situation improves we shall increase this amount in order to settle the outstanding as soon as possible.*

- 6 -

*Many thanks Owners for their co-operation shown so far."*

11.    On the basis of this message the Owners' solicitors submitted that it was clear that the Charterers did not dispute liability for the sum claimed. They applied for a Final and Peremptory Order for service of any submissions by way of defence and counterclaim on behalf of the Charterers, requesting me to attach to any Order made the sanction that if I did not hear from the Charterers by the date fixed, I would proceed to consider their application for a Partial Award on the basis that the sum claimed was clearly due and owing.

12.    On 7th August 2006 I made an Order in the following terms:-

"I refer to Mays Brown's fax message of 27th July. On the basis of the assertion made by Owners that the sum paid is a fraction of the amount due, it seems to me that I must now press ahead with this arbitration.

On 21st June I made an Order requiring Defence submissions (and submissions in support of any Counterclaim) to be served by no later than 21st July. I received no response to that message.

In the circumstances it seems to me that it is appropriate for me now to make a Final and Peremptory Order for service of Points of Defence and Counterclaim as Mays Brown suggest.

Would the parties please note therefore that I now make a Final and Peremptory Order that Balaji Coke Industry, as Charterers under the above charterparties, serve any submissions which they may wish to make by way of Defence to the Claim – and in support of any

– 7 –

> Counterclaim – together with copies of all relevant documents by no
> later than close of business, 14th August.
>
> Balaji Coke Industry Pvt Ltd must be fully aware that if I do not receive
> any submissions by 14th August I shall be bound to conclude that they
> wish to take no part in this arbitration. If I find myself in that position, I
> shall then go on to consider the submissions and documents put before
> me on behalf of the Owners and, if appropriate, then to proceed to an
> Award."

13.    By an email dated 8th August I was informed by a Mr Paritosh Sinha, Advocate,
(whose firm had apparently previously been acting on behalf of the Charterers) that
he had no instructions from them. He requested me to send all further
correspondence directly to the Charterers.

14.    I received email confirmation from the Owners on 13th August that a copy of my
Final and Peremptory Order of 7th August had been passed through the broker
channel to the Charterers.

15.    On 15th August 2006 I was informed by the Owners' solicitors that their clients had
agreed to allow the Charterers a further seven day extension for service of
submissions in response to the application on the basis that if the extended time limit
was not met, the same sanctions would apply as indicated in my Order.

16.    On 21st December 2006 I received a fax message from the London solicitors, Zaiwalla
& Co, who referred to the various contracts stating:-

> "We have at present no instructions from Balaji Coke Pvt Ltd in this matter
> but we will take instructions … We should perhaps mention that we were this

- 8 -

*week instructed by Balaji Coke for another dispute involving Contract of Affreightment dated 24th March 2005 and we had yesterday sent the enclosed notice before arbitration to WAM Singapore.*

*We are unable to say without further detailed instructions whether Balaji are in a position to plead equitable set-off for their damages claim under the "Nanfri" (1978) 2   Lloyds 132 for the damages for the breach by WAM Singapore for 24th March 2005 Contract of Affreightment by them ...   We would therefore respectively suggest that we be allowed to obtain our client's instructions before reverting to you."*

17.    By a fax message also sent on 21st December 2006 the Owners' solicitors referred to their application for a Partial Award and continued:-

"2.    *The respondents did not serve points of defence because, instead, they entered into an agreement, a copy of which is attached, by which they, inter alia:-*

*Expressly and irrevocably admitted a total gross amount of US$890,877.70 as set out in the schedule thereto as due and owing by them to the claimants.*

*Irrevocably accepted that they have no defence to the claimants' claim in the arbitration for the gross debt, costs and compound interest.*

*Agreed a payment schedule in respect of those moneys.*

- 9 -

>   *Agreed to remit an amount of £9,725 in respect of legal fees and disbursements.*

3.   *Despite having expressly agreed that time is of the essence with regard to each and every one of the required payments, the respondents have failed to honour several of those payments. A copy of an email from our clients to the respondents dated 26 November 2006 is attached.*

4.   *Our clients now rely upon their rights under Paragraph 9 of the attached agreement so that the full gross debt is now be deemed immediately payable (with interest having accrued from the date that the sums in question fell due under the contracts) and our clients hereby immediately continue with the arbitration, rely upon the attached admissions and request the Tribunal kindly now to proceed to an award for the full outstanding gross debt (less instalments that have been received), plus compound interest thereon plus legal and arbitrators' costs with compound interest thereon.*

5.   *After allowance for payments that were received, the total gross debt still outstanding is US$623,387.25.*

6.   *With regard to legal costs, the claimants rely upon the agreement at Paragraph 6 of the attached for an immediate award of £9,725 but respectfully request the Tribunal also to order the respondents to reimburse the Tribunal's costs and we also request the Tribunal to retain jurisdiction to make a further award on costs in respect of further fees that may be incurred and interest thereon.*

7.   *The Claimants respectfully request a reasoned award.*

- 10 -

> 8. *Since the Claim is admitted and indefensible, the tribunal is respectfully requested to Order that if the respondents wish to reply to this they must do so within 7 days."*

18.  Attached to this message was a copy of an agreement dated 23rd August 2006  A copy of this agreement ("the Settlement Agreement") is attached hereto as "Annexure A".

19.  The assertion made on behalf of the Owners that the Charterers were in default of their obligations under the Settlement Agreement was not challenged by the Charterers.  Accordingly, I was satisfied that the Owners were entitled to exercise the rights conferred upon them by Clause 9 of the Settlement Agreement.  In particular, they were entitled under paragraph 9(a) to treat the full gross debt as immediately payable.  They were also entitled under paragraph 9(b) to take such steps as were appropriate to enforce their right to payment in the arbitration proceedings which had been stayed in accordance with the Settlement Agreement.

20.  The London solicitors instructed on behalf of the Charterers in December 2006 made it clear that they were instructed in relation only in relation to disputes arising under the contract of affreightment dated 24th March 2005.  They defined their involvement in the following terms:-

> *"We are acting for Balaji Coke Industry Pvt Ltd in respect of a <u>totally separate</u> claim of theirs for repudiation of the COA dated 24th March 2005 against WAM Singapore."* [emphasis added]

Their position was that they had appointed an arbitrator in respect of their clients' claim for repudiatory breach of the COA and that he had been duly appointed as sole

- 11 -

arbitrator by default. The Owners' solicitors took issue with this assertion, contending that it was clear that I had been appointed as sole arbitrator in relation to all disputes arising under the contract of affreightment dated 24th March 2005, as well as under the other contracts set out above.

21.   It is unnecessary for me to refer further to the issues arising out of the challenge to my jurisdiction in relation to the contract of affreightment save to say that the Charterers' solicitors did not dispute my jurisdiction to deal with *"disputes settled under the Settlement Agreement and nothing more."*. I nevertheless thought that it was appropriate to allow them to take further instructions in case their clients had any further submissions to make in relation to the application for a Partial Award.

22.   I therefore made an Order on 17th January 2007 that any submissions by way of response to the application for a Partial Award under the settlement agreement be served by no later than close of business, 24th January 2007.

23.   Shortly after sending my message of 17th January I received a message from the Charterers' solicitors stating:-

> *"As we said before, we do not have papers to form a view concerning the disputes that were settled by the settlement agreement of August 2006."*

24.   The Owners' solicitors referred to the fact that Charterers' solicitors had previously confirmed that they were not instructed with regard to the application for a Partial Award under the contracts and urged me to proceed to an Award on the application promptly, since in their view the Charterers had already been given an ample opportunity to make submissions objecting to the application.

25.   Nevertheless, on 18th January 2007 I made an Order in the following terms:-

- 12 -

"I refer to Mays Brown's fax of 17th January.

Zaiwalla & Co kindly confirmed in their fax of 17th January that were not concerned with disputes settled by the Settlement Agreement of August 2006.

In the circumstances it seems to me that I must now consider the application for an Award pursuant to the terms of the Settlement Agreement.

Balaji Coke Industry Pvt Ltd have been kept fully aware of developments since the application for an Award was made in Mays Brown's fax of 21st December. I assume therefore that if they had wished to comment on the application, they would have done so by now.

However, for the avoidance of any possible misunderstanding, I confirm that I shall now consider the application and, if appropriate, proceed to an Award. If Balaji Coke Industry Pvt Ltd wish to make any further comments, would they please ensure that these are with me by no later than close of business, London, Monday 29th January."

26.     In a message from the Charterers' solicitors sent on 29th January 2007 they requested that they be allowed a further 14 days in which to respond to the application. The response from the Owners' solicitors was that since the claim was admitted in full in the settlement agreement, there could be no defence. On that basis they opposed the application.

– 13 –

27.   On 1st February 2007 I sent a message to the parties' solicitors informing them that I had considered the submissions carefully and concluded that it was not appropriate to grant a further extension of the time allowed for responding to the application for a Partial Award since it seemed to me to be clear that the matter had already been fully explored in the submissions served to date. I confirmed that I was therefore proceeding to an Award.

28.   In the circumstances and on the evidence set out above I was satisfied that there could be no defence to the application for a Partial Award in respect of the sum admitted to be due under the Settlement Agreement. The Owners were therefore entitled to the Award sought.

NOW I, the said Christopher J W Moss, having taken upon myself the burden of this arbitration and having carefully and conscientiously considered the evidence put before me and the submissions addressed to me, DO HEREBY MAKE, ISSUE AND PUBLISH this my PARTIAL AWARD as follows:-

A.   I FIND, HOLD AND DECLARE that the sum of US$623,387.25 and the further sum of £9,725.00 in respect of legal costs are due and owing under the Settlement Agreement.

B.   I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sums of US$623,387.25 (six hundred and twenty-three thousand, three hundred and eighty-seven United States dollars and twenty-five cents) and £9,725.00 (nine thousand, seven hundred and twenty-five pounds Sterling) together with interest on both these sums at the rate of 7% per annum, compounded with three monthly rests from 23rd August 2006 to the date of payment.

- 14 -

C.      I FURTHER AWARD AND ADJUDGE that the Charterers shall bear and pay their own and the Owners' recoverable costs of the arbitration insofar as these relate to the application for this my PARTIAL AWARD, including the costs of this my PARTIAL AWARD in the sum of £2,400.00 (inclusive of my interlocutory fees and charges), PROVIDED that if in the first instance, the Owners shall have paid any part of the costs of this my PARTIAL AWARD, they shall be entitled to immediate reimbursement by the Charterers of the sum so paid, together with interest on this sum at the rate of 7.25% per annum from  the date of payment to the date of reimbursement.

D.      I RESERVE jurisdiction to myself to make a further Award or Awards in respect of all outstanding differences between the parties to this arbitration.

Given under my hand in London this 5th day of February 2007.

...........................................
Sole Arbitrator

_____
Witness

ANNEXURE A



पश्चिमबंग पश्चिम बंगाल WEST BENGAL                10AA 470631

## AGREEMENT

THIS AGREEMENT IS MADE

BETWEEN

( 1 ) WAM SINGAPORE PRIVATE LIMITED                    ("Owners")
    17 Phillip Street, # 05 -01 Grand Building, Singapore 048695

and

( 2 ) BALAJI COKE INDUSTRY PVT LIMITED                 ("Charterers")
    12 Ho-Chi-Minh Sarani, Flat No.2B, 2nd Floor, Kolkata 700071

WHEREAS

(a)    Owners entered into four separate contracts with Charterers as follows:
       (i)    "LAKE TEGA" CP dd. 04.03.05
       (ii)   "AMADEUS" CP dd. 20.04.05
       (iii)  "SEA VENUS" COA dated 24.03.05
       (iv)   "PACIFIC PRIMATE" CP dd. 26.07.05

       Referred to hereafter collectively as "the Contracts".

                                                       1

CONTD

S. CHATTERJEE
Licensed Stamp Vendor
C. C. Court
2 & 3, K.S. Roy Road, Calcutta

2 3 AUG 2006

(b) As on 14th August 2006, Charterers owe Owners a total of US$ 890,877.70 under those contracts ("the gross debt"). Details appear in the attached schedule. After allowance for US$ 107,610.45 due to Charterers by Owners in respect of a fifth contract relating to the "Placid Sea" (which amount both sides hereby agree is the full extent of Owners' liability to Charterers under that contract), the net amount owed by Charterers to Owners is US$ 783,267.25 ("the net debt").

(c) Owners were forced to commence arbitration proceedings in London ("the Arbitration") before Christopher Moss, acting as Sole Arbitrator, in order to recover monies due to them under the Contracts.

(d) Charterers admit that all of the sums referred to in the attached are due and owing and the parties have agreed the following in relation to that debt.

In consideration for Owners agreeing to defer further progress of the arbitration on the following terms and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged by Charterers, the parties hereto have agreed the following:

1. Charterers hereby expressly and irrevocably admit that a total gross amount of US$ 890,877.70 (as more particularly set out in the schedule attached hereto) is due and owing by them to Owners under the Contracts and should have been paid some considerable time ago.

2. Charterers irrevocably accept that they have no defence to Owners' claim in the arbitration for the gross debt, costs and compound interest.

3. Charterers undertake to pay the net debt to Owners as follows:

   (a) US$ 40,000 (Forty Thousand United States Dollars) every 14 days, with the first payment being made before 18th Aug 2006, the second payment being made before 31st Aug 2006 and with all subsequent payments being made on the 1st and 15th of each calendar month commencing from 1st September 2006, with such payments continuing up until 15th March 2007 when a total of US$ 640,000 will have been paid.

   (b) Thereafter the balance amount of US$ 143,267.25 will be remitted by Charterers to Owners in three equal installments on the 1st of April, May and June 2007.




2

4.    Remittances are to be received by Owners into the following account, without deduction on the due date:

**WAM SINGAPORE PRIVATE LIMITED - BANKING DETAILS**

Remit To -
BANK OF NEW YORK, NEW YORK,
ABA ROUTEING No. 0 2 1 0 0 0 0 1 8

For The Account Of -
DBS BANK, 6 SHENTON WAY, DBS BUILDING,
SINGAPORE 0 6 8 8 0 9.

Swift Address    D B S S S G S G
CHIPS UID NO.    0 3 4 6 7 5

For The Credit Of -
WAM SINGAPORE PRIVATE LIMITED.
Account No.  0 0 4 8 - 0 0 1 3 8 4 - 0 1 - 7.

5.    After receipt of the entirety of the net debt in strict accordance with the above terms, the arbitrator shall be advised that Owners' claim for the gross debt and their liability to Charterers under the "Placid Sea" contract have settled. The arbitrator will be invited to render a note of any outstanding fees to Charterers and Charterers shall pay the same in full within 7 days of receipt of the invoice.

6.    By the 15th June 2007, Charterers shall reimburse to Owners an amount of Sterling £9,725 in respect of Owners' legal fees and disbursements to date.

7.    Subject always to and for so long as there is **strict and timely** compliance with paragraphs 3 to 6 above (i) the London arbitration will be placed on hold and (ii) Owners will waive their right to seek interest.

8.    It is expressly agreed, however, that time is of the essence with regard to each and every one of the above required payments.

9.    In the event that any payment referred to at paragraphs 3 to 6 is not received, in full, in Owners' above account on the due date then it is expressly agreed that Owners shall have the right with regard to each instance of default to elect :

    (a)    that the full gross debt shall be deemed immediately   payable (with interest having accrued from the date that the sums in question fell due under the Contracts)



3



(b)   immediately to continue with the arbitration and rely upon the admissions set out herein so that Charterers hereby accept that the arbitrator will be entitled without more to produce an award for the full outstanding gross debt (less any installments that have been received by the date of the award) plus compound interest thereon plus legal and arbitrators' costs and compound interest thereon.

10.   This Agreement is subject to English Law and since the matters governed by this Agreement concern disputes and differences arising/having arisen under the above Contracts, any disputes hereunder or in connection herewith shall be referred to the Tribunal appointed under those Contracts (presently Christopher J W Moss as Sole Arbitrator) or, in the event that he is unable or unwilling to determine the same, to an alternative arbitrator to be agreed between the parties and, in the event that they cannot agree within 14 days of notice from one party to the other requiring them so to do, to be appointed by the president of the time being of the LMAA.

Signed for and on behalf of
**WAM SINGAPORE PRIVATE LIMITED OF SINGAPORE**

CAPT. S. KAPUR
JGM (COMMERCIAL)
Dated: 14TH AUG 2006.

Signed for and on behalf of
**BALAJI COKE INDUSTRY PVT. LIMITED, KOLKATA**
**For Balaji Coke Industry Pvt. Ltd.**

Binay Modi
.............Administrative Executive

Dated:   14.08.06.

4

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

<u>BETWEEN:-</u>

WAM SINGAPORE PRIVATE LIMITED of Singapore

Claimant
(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of Kolkatta

Respondent
(Charterers)

<u>"LAKE TEGA" – Charterparty dated 4th March 2005</u>
<u>"AMADEUS" – Charterparty dated 20th April 2005</u>
<u>"PACIFIC PRIMATE" – Charterparty dated 26th July 2005</u>
<u>Contract of Affreightment dated 24th March 2005 ("SEA VENUS")</u>

---

PARTIAL ARBITRATION AWARD

---

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

WAM SINGAPORE PRIVATE LIMITED,

                    Plaintiff,

     - against -

BALAJI COKE INDUSTRY PVT. LTD.,

                   Defendant.

--------------------------------------------------------------X

08 Civ.

ECF CASE

JAN 0 3 2008

U.S.D.C. S.D. N.Y.
CASHIERS

### VERIFIED COMPLAINT

    Plaintiff, WAM SINGAPORE PRIVATE LIMITED ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, BALAJI COKE INDUSTRY PVT. LTD. (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Singapore.

    3.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in India.

4.     By charter parties and contracts of affreightment entered into in March, April, July, and August 2005, Plaintiff, as the owner, voyage-chartered a number of vessels to Defendant, as the charterer, for the carriage of bulk coking coal from Australia or U.S.A. to India.

5.     In the performance of the aforesaid voyages, there accrued charges for net freight and demurrage for the following vessels: (1) LAKE TEGA/contract date March 4, 2005; (2) AMADEUS/contract date April 20, 2005; (3) SEA VENUS/contract date March 24, 2005; and (4) PACIFIC PRIMATE/contract date July 26, 2005. While Defendant effected partial payment to Plaintiff, in breach of the contracts Defendant failed to pay the balance owing to Plaintiff despite due demand.

6.     Pursuant to the parties' contracts, all disputes were to be submitted to arbitration in London with English Law to apply. Plaintiff duly submitted its claims to arbitration and has obtained a Partial Arbitration Award dated February 5, 2007 in its favor as against Defendant. *See Arbitration Award dated February 5, 2007 attached as Exhibit 1.* Defendant has failed to pay any part of the arbitration award.

7.     To date Plaintiff has been awarded the following amounts in the London arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $623,387.25; |
| B. | Attorneys' fees of £9,725.00: | $19,203.17; |
| C. | Interest on principal claim and attorneys' fees at 7% compounded quarterly from August 23, 2006 through date of payment (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $148,720.69; |
| D. | Arbitrator's fees of £2,400: | $4,740.02 |
| E. | Interest on arbitrator's fees at 7.25% compounded | |

2

quarterly from February 5, 2007 through date of
reimbursement by Defendant (Plaintiff estimates
date of enforcement/payment will be August 23, 2009):          $906.40

**Total:**                                                    **$796,957.53.**

7.      The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of one or more garnishees which are believed to be due and owing to the

Defendant.

8.      The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States

Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and

to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That the Court retain jurisdiction to compel the Defendant to arbitrate in

accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.      That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

3

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels,

credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any

other funds held by any garnishee within the District which are due and owing to the Defendant,

in the amount of $796,957.53 calculated to date to secure the Plaintiff's claims, and that all

persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Complaint;

     D.     That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court

     E.     That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

     F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

     G.     That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: January 3, 2008
      New York, NY

                    The Plaintiff,
                    WAM SINGAPORE PRIVATE LIMITED

                    By: _____
                    Nancy R. Siegel
                    Charles E. Murphy
                    LENNON, MURPHY & LENNON, LLC
                    420 Lexington Ave., Suite 300
                    New York, NY 10170
                    (212) 490-6050 – phone
                    (212) 490-6070 – fax
                    cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                )   ss.:   New York City
County of New York )

1.    My name is Nancy R. Siegel.

2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      January 3, 2007
          New York, NY

                          Nancy R. Siegel

**EXHIBIT 1**

259966

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

WAM SINGAPORE PRIVATE LIMITED of Singapore

Claimant
(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of Kolkatta

Respondent
(Charterers)

"LAKE TEGA" – Charterparty dated 4th March 2005
"AMADEUS" – Charterparty dated 20th April 2005
"PACIFIC PRIMATE" – Charterparty dated 26th July 2005
Contract of Affreightment dated 24th March 2005 ("SEA VENUS")

PARTIAL ARBITRATION AWARD

WHEREAS:

1.  By four contracts dated as above and substantially in the form of the Americanised
    Welsh Coal charter 1979 printed form, as amended, ("the contracts"), the four vessels
    referred to above were chartered by the Claimant ("the Owners") to the Respondent
    ("the Charterers") for the carriage of coking coal from Australia to Indian on terms
    and conditions more particularly set out in each of the contracts, the vessel, "SEA
    VENUS", being nominated for the first lifting pursuant to the contract of

– 2 –

affreightment dated 24th March 2005.

2.    Clause 5 of each of the contracts provided:-

> *"If any dispute or difference should arise under this Charter, same to be referred to three parties in the City of London, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision or that of any of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court. Said three parties to be commercial men who are members of the Institute of Arbitrators in London."*

Paragraphs 28 and 29 of the fixture recapitulation message for the "LAKE TEGA" which (was used as a pro-forma for the other charterparties) provided:-

> *"28.    This negotiation/trade to be made in accordance with English law, English law to apply.*
>
> *29.    Arbitration at London as English law."*

3.    Disputes arose as detailed hereafter for the determination of which the Owners, through their London solicitors, on 31st January 2006, appointed me, the undersigned Christopher J W Moss of 4 Charlotte Place, Wilton Road, London SW1V 1DP as the arbitrator nominated by them under each of the contracts and called upon the Charterers by a message under each contract sent on 1st February 2006 to appoint an arbitrator within 14 days of receipt of that notice.

4.    No response was received from or on behalf of the Charterers to this message. A further message was sent to the Charterers on 30th March referring to my appointment and giving notice under Section 17(1) of the English Arbitration Act

- 3 -

1996 that the Owners proposed to appoint me as sole arbitrator if, within seven clear days of receipt of the notice, the Charterers did not appoint an arbitrator and notify the Owners that they had done so.

5.    No response was received from or on behalf of the Charterers to the notice served on 30th March. Accordingly, on 13th June 2006, the Owners requested me to accept appointment as sole arbitrator by default pursuant to the provisions of Section 17 of the English Arbitration Act 1996 and I confirmed by a fax message of the following day, 14th June 2006, that I was accepting this appointment.

6.    Claim submissions with supporting documents were served by the Owners' solicitors on 19th June 2006. Although the claims arose under four different contracts, the Owners' solicitors treated them as a single reference to arbitration and this approach was followed by the Charterers in subsequent negotiations. I therefore also followed this informal agreement to consolidate the disputes.

7.    The Owners claimed a balance of freight and demurrage under the four contracts in the total sum of US$833,211.25, net of dispatch which they accepted was due under a further charterparty relating to the vessel "PLACID SEA" in the sum of US$107,610.45. The sums claimed in respect of the four vessels were as follows:-

"LAKE TEGA" – US$113,826.56

"AMADEUS" – US$148,163.24

"SEA VENUS" – US$280,678.98

"PACIFIC PRIMATE" – US$398,152.92

The Owners also claimed interest and costs.

- 4 -

8.    In their claim submissions the Owners maintained that the Charterers had never disputed liability or asserted any defence to the claims put forward.

9.    In response to the claim submissions served on behalf of the Owners I made an Order in the following terms on 21st June 2006:-

> "May I acknowledge receipt of the letter from Mays Brown Solicitors of 19th June with Claim submissions in these arbitrations on behalf of the Owners, WAM Singapore Private Ltd.
>
> I trust that Balaji Coke Industry Pvt and/or their lawyers have now received copies of the Claim submissions and supporting documents.
>
> In the final paragraph of their letter of 19th June Mays Brown state that they await Charterers' confirmation that Defence submissions will be served within the usual period of 28 days.
>
> I should perhaps explain to Balaji and/or their lawyers – if they are not already aware of this fact – that it is customary in maritime arbitrations in London to expect Defence and Counterclaim submissions to be served within 28 days of receipt of Claim submissions. This is part of the LMAA recommended procedure. If Balaji or their lawyers are unfamiliar with any details of the LMAA procedure, may I draw their attention to the fact that the procedure and other helpful information can be found on the LMAA website at www.lmaa.org.uk.
>
> On the assumption that the Claim submissions and supporting documents in the hands of the Respondents and their lawyers, it seems to me that it should be possible for submissions by way of Defence (and

- 5 -

submissions in support of any Counterclaim) to be served by no later than 21st July.

I therefore now make an Order to that effect.

If there is any difficulty in complying with this time limit, could I request Sinha & Company (or Balaji) to let me know as soon as possible so that the position may be reviewed. May I also mention that any exchanges with me should also be copied to Mays Brown Solicitors so that we all remain on the same wavelength.

I wait to hear from Balaji or Sinha & Company with Defence submissions."

10.   No response was received from or on behalf of the Charterers to the Order made on 21st June. On 27th July the Owners' solicitors informed me that they had heard nothing further from the Charterers save that a further payment of US$25,000.00 had been made. They provided me with a copy of a message sent by the Charterers which stated as follows:-

*"With reference to the outstanding due to Owners, we would like to advise Owners that due to very bad coke market and therefore acute cash flow problem faced by us we were unable to make payments in time. However we are now making efforts to arrange remittance of USD25,000.00 in every alternative week starting from this week. Necessary steps for the process of foreign remittance shall be initiated today itself. Would also like to mention that once our cash flow situation improves we shall increase this amount in order to settle the outstanding as soon as possible.*

-6-

*Many thanks Owners for their co-operation shown so far."*

11.   On the basis of this message the Owners' solicitors submitted that it was clear that
      the Charterers did not dispute liability for the sum claimed. They applied for a Final
      and Peremptory Order for service of any submissions by way of defence and
      counterclaim on behalf of the Charterers, requesting me to attach to any Order made
      the sanction that if I did not hear from the Charterers by the date fixed, I would
      proceed to consider their application for a Partial Award on the basis that the sum
      claimed was clearly due and owing.

12.   On 7th August 2006 I made an Order in the following terms:-

            *"I refer to Mays Brown's fax message of 27th July. On the basis of the
            assertion made by Owners that the sum paid is a fraction of the amount
            due, it seems to me that I must now press ahead with this arbitration.*

            *On 21st June I made an Order requiring Defence submissions (and
            submissions in support of any Counterclaim) to be served by no later
            than 21st July. I received no response to that message.*

            *In the circumstances it seems to me that it is appropriate for me now to
            make a Final and Peremptory Order for service of Points of Defence and
            Counterclaim as Mays Brown suggest.*

            *Would the parties please note therefore that I now make a Final and
            Peremptory Order that Balaji Coke Industry, as Charterers under the
            above charterparties, serve any submissions which they may wish to
            make by way of Defence to the Claim – and in support of any*

- 7 -

Counterclaim — together with copies of all relevant documents by no
later than close of business, 14th August.

Balaji Coke Industry Pvt Ltd must be fully aware that if I do not receive
any submissions by 14th August I shall be bound to conclude that they
wish to take no part in this arbitration. If I find myself in that position, I
shall then go on to consider the submissions and documents put before
me on behalf of the Owners and, if appropriate, then to proceed to an
Award."

13.   By an email dated 8th August I was informed by a Mr Paritosh Sinha, Advocate,
(whose firm had apparently previously been acting on behalf of the Charterers) that
he had no instructions from them.   He requested me to send all further
correspondence directly to the Charterers.

14.   I received email confirmation from the Owners on 13th August that a copy of my
Final and Peremptory Order of 7th August had been passed through the broker
channel to the Charterers.

15.   On 15th August 2006 I was informed by the Owners' solicitors that their clients had
agreed to allow the Charterers a further seven day extension for service of
submissions in response to the application on the basis that if the extended time limit
was not met, the same sanctions would apply as indicated in my Order.

16.   On 21st December 2006 I received a fax message from the London solicitors, Zaiwalla
& Co, who referred to the various contracts stating:-

"We have at present no instructions from Balaji Coke Pvt Ltd in this matter
but we will take instructions … We should perhaps mention that we were this

- 8 -

*week instructed by Balaji Coke for another dispute involving Contract of Affreightment dated 24th March 2005 and we had yesterday sent the enclosed notice before arbitration to WAM Singapore.*

*We are unable to say without further detailed instructions whether Balaji are in a position to plead equitable set-off for their damages claim under the "Nanfri" (1978) 2 Lloyds 132 for the damages for the breach by WAM Singapore for 24th March 2005 Contract of Affreightment by them … We would therefore respectively suggest that we be allowed to obtain our client's instructions before reverting to you."*

17.    By a fax message also sent on 21st December 2006 the Owners' solicitors referred to their application for a Partial Award and continued:-

"2.    *The respondents did not serve points of defence because, instead, they entered into an agreement, a copy of which is attached, by which they, inter alia:-*

*Expressly and irrevocably admitted a total gross amount of US$890,877.70 as set out in the schedule thereto as due and owing by them to the claimants.*

*Irrevocably accepted that they have no defence to the claimants' claim in the arbitration for the gross debt, costs and compound interest.*

*Agreed a payment schedule in respect of those moneys.*

- 9 -

*Agreed to remit an amount of £9,725 in respect of legal fees and disbursements.*

3.  *Despite having expressly agreed that time is of the essence with regard to each and every one of the required payments, the respondents have failed to honour several of those payments. A copy of an email from our clients to the respondents dated 26 November 2006 is attached.*

4.  *Our clients now rely upon their rights under Paragraph 9 of the attached agreement so that the full gross debt is now be deemed immediately payable (with interest having accrued from the date that the sums in question fell due under the contracts) and our clients hereby immediately continue with the arbitration, rely upon the attached admissions and request the Tribunal kindly now to proceed to an award for the full outstanding gross debt (less instalments that have been received), plus compound interest thereon plus legal and arbitrators' costs with compound interest thereon.*

5.  *After allowance for payments that were received, the total gross debt still outstanding is US$623,387.25.*

6.  *With regard to legal costs, the claimants rely upon the agreement at Paragraph 6 of the attached for an immediate award of £9,725 but respectfully request the Tribunal also to order the respondents to reimburse the Tribunal's costs and we also request the Tribunal to retain jurisdiction to make a further award on costs in respect of further fees that may be incurred and interest thereon.*

7.  *The Claimants respectfully request a reasoned award.*

- 10 -

8:    *Since the Claim is admitted and indefensible, the tribunal is respectfully requested to Order that if the respondents wish to reply to this they must do so within 7 days.*"

18.    Attached to this message was a copy of an agreement dated 23rd August 2006  A copy of this agreement ("the Settlement Agreement") is attached hereto as "Annexure A".

19.    The assertion made on behalf of the Owners that the Charterers were in default of their obligations under the Settlement Agreement was not challenged by the Charterers. Accordingly, I was satisfied that the Owners were entitled to exercise the rights conferred upon them by Clause 9 of the Settlement Agreement. In particular, they were entitled under paragraph 9(a) to treat the full gross debt as immediately payable. They were also entitled under paragraph 9(b) to take such steps as were appropriate to enforce their right to payment in the arbitration proceedings which had been stayed in accordance with the Settlement Agreement.

20.    The London solicitors instructed on behalf of the Charterers in December 2006 made it clear that they were instructed in relation only in relation to disputes arising under the contract of affreightment dated 24th March 2005. They defined their involvement in the following terms:-

"*We are acting for Balaji Coke Industry Pvt Ltd in respect of a totally separate claim of theirs for repudiation of the COA dated 24th March 2005 against WAM Singapore.*" [emphasis added]

Their position was that they had appointed an arbitrator in respect of their clients' claim for repudiatory breach of the COA and that he had been duly appointed as sole

- 11 --

arbitrator by default.    The Owners' solicitors took issue with this assertion, contending that it was clear that I had been appointed as sole arbitrator in relation to all disputes arising under the contract of affreightment dated 24th March 2005, as well as under the other contracts set out above.

21.    It is unnecessary for me to refer further to the issues arising out of the challenge to my jurisdiction in relation to the contract of affreightment save to say that the Charterers' solicitors did not dispute my jurisdiction to deal with *"disputes settled under the Settlement Agreement and nothing more."*.    I nevertheless thought that it was appropriate to allow them to take further instructions in case their clients had any further submissions to make in relation to the application for a Partial Award.

22.    I therefore made an Order on 17th January 2007 that any submissions by way of response to the application for a Partial Award under the settlement agreement be served by no later than close of business, 24th January 2007.

23.    Shortly after sending my message of 17th January I received a message from the Charterers' solicitors stating:-

> *"As we said before, we do not have papers to form a view concerning the disputes that were settled by the settlement agreement of August 2006."*

24.    The Owners' solicitors referred to the fact that Charterers' solicitors had previously confirmed that they were not instructed with regard to the application for a Partial Award under the contracts and urged me to proceed to an Award on the application promptly, since in their view the Charterers had already been given an ample opportunity to make submissions objecting to the application.

25.    Nevertheless, on 18th January 2007 I made an Order in the following terms:-

- 12 -

"I refer to Mays Brown's fax of 17ᵗʰ January,

Zaiwalla & Co kindly confirmed in their fax of 17ᵗʰ January that were not concerned with disputes settled by the Settlement Agreement of August 2006.

In the circumstances it seems to me that I must now consider the application for an Award pursuant to the terms of the Settlement Agreement.

Balaji Coke Industry Pvt Ltd have been kept fully aware of developments since the application for an Award was made in Mays Brown's fax of 21ˢᵗ December. I assume therefore that if they had wished to comment on the application, they would have done so by now.

However, for the avoidance of any possible misunderstanding, I confirm that I shall now consider the application and, if appropriate, proceed to an Award. If Balaji Coke Industry Pvt Ltd wish to make any further comments, would they please ensure that these are with me by no later than close of business, London, Monday 29ᵗʰ January."

26.    In a message from the Charterers' solicitors sent on 29ᵗʰ January 2007 they requested that they be allowed a further 14 days in which to respond to the application. The response from the Owners' solicitors was that since the claim was admitted in full in the settlement agreement, there could be no defence. On that basis they opposed the application.

– 13 –

27.  On 1st February 2007 I sent a message to the parties' solicitors informing them that I had considered the submissions carefully and concluded that it was not appropriate to grant a further extension of the time allowed for responding to the application for a Partial Award since it seemed to me to be clear that the matter had already been fully explored in the submissions served to date. I confirmed that I was therefore proceeding to an Award.

28.  In the circumstances and on the evidence set out above I was satisfied that there could be no defence to the application for a Partial Award in respect of the sum admitted to be due under the Settlement Agreement. The Owners were therefore entitled to the Award sought.

NOW I, the said Christopher J W Moss, having taken upon myself the burden of this arbitration and having carefully and conscientiously considered the evidence put before me and the submissions addressed to me, DO HEREBY MAKE, ISSUE AND PUBLISH this my PARTIAL AWARD as follows:-

A.  I FIND, HOLD AND DECLARE that the sum of US$623,387.25 and the further sum of £9,725.00 in respect of legal costs are due and owing under the Settlement Agreement.

B.  I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sums of US$623,387.25 (six hundred and twenty-three thousand, three hundred and eighty-seven United States dollars and twenty-five cents) and £9,725.00 (nine thousand, seven hundred and twenty-five pounds Sterling) together with interest on both these sums at the rate of 7% per annum, compounded with three monthly rests from 23rd August 2006 to the date of payment.

- 14 -

C.    I FURTHER AWARD AND ADJUDGE that the Charterers shall bear and pay their
own and the Owners' recoverable costs of the arbitration insofar as these relate to the
application for this my PARTIAL AWARD, including the costs of this my PARTIAL
AWARD in the sum of £2,400.00 (inclusive of my interlocutory fees and charges),
PROVIDED that if in the first instance, the Owners shall have paid any part of the
costs of this my PARTIAL AWARD, they shall be entitled to immediate
reimbursement by the Charterers of the sum so paid, together with interest on this
sum at the rate of 7.25% per annum from  the date of payment to the date of
reimbursement.

D.    I RESERVE jurisdiction to myself to make a further Award or Awards in respect of
all outstanding differences between the parties to this arbitration.

Given under my hand in London this 5th day of February 2007.


_____
Sole Arbitrator


_____
Witness

Jan. 3. 2008 2:21PM    Lennon, Murphy & Lennon LLC            No. 2916   P. 35

ANNEXURE A



पश्चिमबंग. पश्चिम बंगाल WEST BENGAL          10AA 470631

## AGREEMENT

THIS AGREEMENT IS MADE

BETWEEN

(1) WAM SINGAPORE PRIVATE LIMITED                  ("Owners")
    17 Phillip Street, # 05 -01 Grand Building, Singapore 048695·

            and

(2) BALAJI COKE INDUSTRY PVT LIMITED              ("Charterers")
    12 Ho-Chi-Minh Sarani, Flat No.2B, 2ⁿᵈ Floor, Kolkata 700071

WHEREAS

(a)    Owners entered into four separate contracts with Charterers as follows:
    (i)    "LAKE TEGA" CP dd. 04.03.05
    (ii)   "AMADEUS" CP dd. 20.04.05
    (iii)  "SEA VENUS" COA dated 24.03.05
    (iv)  "PACIFIC PRIMATE" CP dd. 26.07.05

Referred to hereafter collectively as "the Contracts".

1





(b)  As on 14th August 2006, Charterers owe Owners a total of US$ 890,877.70 under those contracts ("the gross debt"). Details appear in the attached schedule. After allowance for US$ 107,610.45 due to Charterers by Owners in respect of a fifth contract relating to the "Blacit Sea" (which amount both sides hereby agree is the full extent of Owners' liability to Charterers under that contract), the net amount owed by Charterers to Owners is US$ 783,267.25 ("the net debt").

(c)  Owners were forced to commence arbitration proceedings in London ("the Arbitration") before Christopher Moss, acting as Sole Arbitrator, in order to recover monies due to them under the Contracts.

(d)  Charterers admit that all of the sums referred to in the attached are due and owing and the parties have agreed the following in relation to that debt.

In consideration for Owners agreeing to defer further progress of the arbitration on the following terms and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged by Charterers, the parties hereto have agreed the following:

1.  Charterers hereby expressly and irrevocably admit that a total gross amount of US$ 890,877.70 (as more particularly set out in the schedule attached hereto) is due and owing by them to Owners under the Contracts and should have been paid some considerable time ago.

2.  Charterers irrevocably accept that they have no defence to Owners' claim in the arbitration for the gross debt, costs and compound interest.

3.  Charterers undertake to pay the net debt to Owners as follows:

(a)  US$ 40,000 (Forty Thousand United States Dollars) every 14 days, with the first payment being made before 18th Aug 2006, the second payment being made before 31st Aug 2006 and with all subsequent payments being made on the 1st and 15th of each calendar month commencing from 1st September 2006, with such payments continuing up until 15th March 2007 when a total of US$ 640,000 will have been paid.

(b)  Thereafter the balance amount of US$ 143,267.25 will be remitted by Charterers to Owners in three equal installments on the 1st of April, May and June 2007.





2

41. Remittances are to be received by Owners into the following account, without deduction on the due date:

WAM SINGAPORE PRIVATE LIMITED - BANKING DETAILS

Remit To -
BANK OF NEW YORK, NEW YORK,
ABA ROUTEING No. 021000018

For The Account Of -
DBS BANK, 6 SHENTON WAY, DBS BUILDING,
SINGAPORE 068809.

Swift Address   DBSSSGSG
CHIPS UID NO.   034675

For The Credit Of -
WAM SINGAPORE PRIVATE LIMITED.
Account No.  0048-001384-01-7.

5.    After receipt of the entirety of the net debt in strict accordance with the above terms, the arbitrator shall be advised that Owners' claim for the gross debt and their liability to Charterers under the "Placid Sea" contract have settled. The arbitrator will be invited to render a note of any outstanding fees to Charterers and Charterers shall pay the same in full within 7 days of receipt of the invoice.

6.    By the 15th June 2007, Charterers shall reimburse to Owners an amount of Sterling £9,725 in respect of Owners' legal fees and disbursements to date.

7.    Subject always to and for so long as there is strict and timely compliance with paragraphs 3 to 6 above (i) the London arbitration will be placed on hold and (ii) Owners will waive their right to seek interest.

8.    It is expressly agreed, however, that time is of the essence with regard to each and every one of the above required payments.

9.    In the event that any payment referred to at paragraphs 3 to 6 is not received, in full, in Owners' above account on the due date then it is expressly agreed that Owners shall have the right with regard to each instance of default to elect :

(a)    that the full gross debt shall be deemed immediately payable (with interest having accrued from the date that the sums in question fell due under the Contracts)



3



(b). Immediately to continue with the arbitration and rely upon the admissions set out herein so that Charterers hereby accept that the arbitrator will be entitled without more to produce an award for the full outstanding gross debt (less any installments that have been received by the date of the award) plus compound interest thereon plus legal and arbitrators' costs and compound interest thereon.

10. This Agreement is subject to English Law and since the matters governed by this Agreement concern disputes and differences arising/having arisen under the above Contracts, any disputes hereunder or in connection herewith shall be referred to the Tribunal appointed under those Contracts (presently Christopher J W Moss as Sole Arbitrator) or, in the event that he is unable or unwilling to determine the same, to an alternative arbitrator to be agreed between the parties and, in the event that they cannot agree within 14 days of notice from one party to the other requiring them so to do, to be appointed by the president of the time being of the LMAA.

Signed for and on behalf of
WAM SINGAPORE PRIVATE LIMITED OF SINGAPORE

CAPT. S. KAPUR
JGM (COMMERCIAL)
Dated: 14ᵗʰ AUG 2006.

Signed for and on behalf of
BALAJI COKE INDUSTRY PVT. LIMITED, KOLKATA
For Balaji Coke Industry Pvt. Ltd.

Administrative Executive

Dated:  14.08.06.

<u>IN THE MATTER OF THE ARBITRATION ACT</u>
<u>1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

<u>BETWEEN:-</u>

WAM SINGAPORE PRIVATE LIMITED of
Singapore

Claimant
(Owners)

- and -

BALAJI COKE INDUSTRY PVT LIMITED of
Kolkatta

Respondent
(Charterers)

<u>"LAKE TEGA" – Charterparty dated 4th March</u>
<u>2005</u>
<u>"AMADEUS" – Charterparty dated 20th April</u>
<u>2005</u>
<u>"PACIFIC PRIMATE" – Charterparty dated 26th</u>
<u>July 2005</u>
<u>Contract of Affreightment dated 24th March 2005</u>
<u>("SEA VENUS")</u>

PARTIAL ARBITRATION AWARD

# EXHIBIT 3

i SDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/4/08_

NITED STATES DISTRICT COURT
OUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

/AM SINGAPORE PRIVATE LIMITED,                    **08 CV 0044**

             Plaintiff,                     08 Civ.
                       :
                       :    ECF CASE
  - against -                                    :

ALAJI COKE INDUSTRY PVT. LTD.,

             Defendant.
-------------------------------------------------------X

## EX-PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT

WHEREAS, on January 3, 2008 Plaintiff, WAM SINGAPORE PRIVATE LIMITED,

filed a Verified Complaint herein for damages amounting to $796,957.53 inclusive of interest,

costs and reasonable attorney's fee, and praying for the issuance of Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for

Certain Admiralty and Maritime Claims of the Federal Rules and Civil Procedure; and

     WHEREAS, the Process of Maritime Attachment and Garnishment would command that

the United States Marshal or other designated process server attach any and all of the

Defendants' property within the District of this Court; and

     WHEREAS, the Court has reviewed the Verified Complaint and the Supporting

Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist, it is hereby

     NOW, upon motion of the Plaintiff, it is hereby:

     ORDERED, that pursuant to Rule B of the Supplemental Rules for Certain Admiralty

and Maritime Claims, the Clerk of Court shall issue Process of Maritime Attachment and

Garnishment against all tangible or intangible property, credits, letters of credit, bills of lading,

effects, debts and monies, electronic funds transfers, freights, sub-freights, charter hire, sub

uarter hire or any other funds or property up to the amount of $796,957.53 belonging to, due or

being transferred to, from or for the benefit of the Defendant, including but not limited to such

roperty as may be held, received or transferred in Defendant's name(s), or as may be held,

eceived or transferred for its benefit at, moving through, or within the possession, custody or

ontrol of banking/financial institutions and/or other institutions or such other garnishees to be

amed, or later identified, on whom a copy of the Process of Maritime Attachment and

Garnishment may be served; and it is

ORDERED that supplemental process enforcing the Court's Order may be issued by the

Clerk upon application without further Order of the Court; and it is further

ORDERED that following initial service by the U.S. Marshal or other designated process

server upon each garnishee, that supplemental service of the Process of Maritime Attachment

and Garnishment, as well as this Order, may be made by way of facsimile transmission or other

verifiable electronic means, including e-mail, to each garnishee; and it is further

*provided garnishee consents to same*

ORDERED that service on any garnishee as described above is deemed to be effective

and continuous service throughout the remainder of the day upon which service is made

commencing from the time of such service, and such service is further deemed to be effective

through the end of the next business day, provided that another service is made the next business

*provided garnishee consents to same*

day; and it is further

ORDERED that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee

may consent, in writing, to accept service by any other means.

Dated: January 3, 2008

SO ORDERED:

_____

U.S.D.J.

J. MICHAEL McMAHON,                    CLERK

BY _____

DEPUTY CLERK

# EXHIBIT 4

O?3 CV 4-1
*Docket no.*

## THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Marshal of the Southern District of New York (or designated process server) - GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court for the Southern District of New York on the 3rd day of January 2008 by

### WAM SINGAPORE PRIVATE LIMITED,

Plaintiff,

against

### BALAJI COKE INDUSTRY PVT. LTD.

Defendant,

In a certain action for breach of maritime contract wherein it is alleged that there is due and owing from the Defendant to the said Plaintiff the amount $796,957.53 and praying for process of maritime attachment and garnishment against the said Defendant,

WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee(s) shall serve their answer(s), together with answers to any interrogatories served with the Complaint, within 20 days after service of process upon him and requires that Defendant shall serve its answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

NOW, THEREFORE, we do hereby command you that if the said Defendant cannot be found within the District you attach goods and chattels to the amount sued for; and if such property cannot be found that you attach other property, credit and effects to the amount sued for in the hands of:

ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of New York, BNP Paribas, Barclay's Bank, Citibank, Calyon, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Societe Generale, Standard Chartered Bank, UBS, and/or Wachovia Bank N.A.

to wit: property, letters of credit, deposits, funds, credits, bills of lading, debts, settlement agreements, or other assets, tangible or intangible, in whatever form of:

### BALAJI COKE INDUSTRY PVT. LTD.

and that you promptly after execution of this process, file the same in this court with your return thereon.

WITNESS, the Honorable Kimba M. Wood, Chief Judge of said Court, this 4 day of January 2008, and of our Independence the two-hundred and thirty-second.

Lennon, Murphy & Lennon, LLC
Attorneys for Plaintiff
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050

J. MICHAEL McMAHON
Clerk

By:
Deputy Clerk

NOTE: This Process is issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and/or New York Civil Practice Law and Rules, Article 62.



CERTIFIED COPY
J. MICHAEL McMAHON                              CLERK

BY
DEPUTY CLERK

# EXHIBIT 5

**Lennon,**
**Murphy &**
**Lennon,** LLC

A T T O R N E Y S   A T   L A W

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070

www.lenmur.com

Tide Mill Landing
2425 Post Rd. Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615

mail@lenmur.com

February 13, 2008

*__Via International Registered Mail, Return Receiptl__*
**Balaji Coke Industry Pvt. Ltd.**
12, Ho-Chi Minh Sarani, Suite -2B
Calcutta, 700 071
India

Re:    **Wam Singapore Private Limited v. Balaji Coke Industry Pvt. Ltd.**
       Docket Number: 08 Civ. 44
       Our File Number: 1330-08

Dear Sir or Madam:

    We represent the Plaintiff, Wam Singapore Private Limited in the above referenced lawsuit. We write to advise you that pursuant to an Ex Parte Order of Maritime Attachment and Garnishment issued in the above referenced lawsuit, your property was attached at American Express Bank on or about February 5, 2008 in the approximate amount of $50,000.

    Please find attached to this letter the following documents filed and/or issued in the above referenced lawsuit including, the Summons, Complaint, Affidavit in Support, Rule 7.1 Statement, Ex Parte Order of Maritime Attachment and Garnishment and Process of Attachment.  Please also find attached hereto the Individual Rules for the Honorable Judge Griesa.

    Should you have any questions or concerns, please contact us at your convenience.

    This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

                              Very truly yours,

                              Mary Fedorchak

mef/bhs
/enclosure

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WAM SINGAPORE PRIVATE LIMITED,                    :

                          Plaintiff,              :       08 Civ. 0044(VM)
                                                  :
        - against -                               :       ECF CASE
                                                  :
BALAJI COKE INDUSTRY PVT. LTD.,                   :
                                                  :
                          Defendant.              :
-------------------------------------------------------------------X

## AFFIDAVIT OF SERVICE

State of Connecticut  )
                      )    ss:    Town of Southport
County of Fairfield   )

        Coleen A. McEvoy, having been duly sworn, deposes and states the following

under oath:

        1.      I am a member in good standing of the Bar of this Court and an attorney in

the law firm of Lennon, Murphy & Lennon, LLC, which represents the interests of the

Plaintiff herein.

        3.      Service of the Summons, Verified Complaint, Affidavit in Support of

Prayer for Attachment, Rule 7.1 Disclosure Statement, Ex Parte Order and Process of

Maritime Attachment and Garnishment in the instant action, was made on the Defendant

by International Registered Mail, Return Receipt on February 13, 2008, pursuant to Rule

B(2)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See*

*copies of Receipt for Registered Mail and Return Receipt annexed hereto as Exhibit "1."*

Dated: Southport, CT
      August 11, 2008

_____
Coleen A. McEvoy

Sworn to and subscribed before me this
11th day of August 2008.

_____
NOTARY PUBLIC

# EXHIBIT 1

Registered No. RE201992427US

Date Stamp

| Reg. Fee | $10.15 | | | 0490 |
|---|---|---|---|---|
| Handling Charge | $0.00 | Return Receipt | $2.15 | 07 |
| Postage | $7.20 | Restricted Delivery | $0.00 | 02/13/08 |
| Received by | | | | |

To Be Completed By Post Office

Customer Must Declare Full Value $0.00

☐ With Postal Insurance
☒ Without Postal Insurance

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

OFFICIAL USE

06890

FROM  Lennon Murphy Lennon
2425 Post Rd
Southport, CT 06890
1330

TO  Balaji Coke Industry Pvt. Ltd
12, Ho-Chi Minh Sarani, Suite 2B
Calcutta 700 071
India

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

---

Completed by the office of origin (A remplir par le bureau d'origine.)

| Item Description (Nature de l'envoi) | ☑ Registered Article (Envoi recommandé) | ☐ Letter (Lettre) | ☐ Printed Matter (Imprimé) | ☐ Other (Autre) | ☐ Express Mail International |
|---|---|---|---|---|---|
| ☐ Insured Parcel (Colis avec valeur déclarée) | Insured Value (Valeur déclarée) 6 | | Article Number RE 201 992 427 US | | |

Office of Mailing (Bureau de dépôt)  Southport-CT-06890

Date of Posting (Date de dépôt)  2-13-08

Addressee Name or Firm (Nom ou raison sociale du destinataire)  Balaji Coke Industry Pvt. Ltd

Street and No. (Rue et No.)  12 Ho-Chi Minh Sarani, Suite 2B

Place and Country (Localité et pays)  Calcutta 700 071   India

This receipt must be signed by: (1) the addressee; or (2) a person authorized to sign under the regulations of the country of destination; or, (3) if these regulations so provide, by the employee of the office of destination. This signed form will be returned to the sender by the first mail.

Le présent reçu sera signé par le destinataire ou, sa une personne y autorisée en vertu des règlements du pays de destination, ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier directement à l'expéditeur.

☐ The article mentioned above was duly delivered.
(L'envoi mentionné ci-dessus a été dûment livré.)

Date 23/2/08

Signature of Addressee (Signature du destinataire)

Office of Destination Employee Signature (Signature de l'agent du bureau de destination)

Postmark of the office of destination (Timbre du bureau de destination)

PS Form 2865, March 2007 (Reverse) PSN 7530-01-000-9775

# EXHIBIT 7

Lennon,
Murphy &
Lennon, LLC

ATTORNEYS AT LAW

Tl. yBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070

www.lenmur.com

Tide Mill Landing
2425 Post Rd. Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615

mail@lenmur.com

February 20, 2008

*Via International Registered Mail, Return Receipt*
**Balaji Coke Industry Pvt. Ltd.**
12, Ho-Chi Minh Sarani, Suite -2B
Calcutta, 700 071
India

Re:    **Wam Singapore Private Limited v. Balaji Coke Industry Pvt. Ltd.**
       Docket Number: 08 Civ. 44
       Our File Number: 1330-08

Dear Sir or Madam:

    We represent the Plaintiff, Wam Singapore Private Limited in the above referenced lawsuit. We write to advise you that pursuant to an Ex Parte Order of Maritime Attachment and Garnishment issued in the above referenced lawsuit, your property was further attached at American Express Bank on or about February 19, 2008 in the approximate amount of $175,000.00.

    The Summons, Complaint, Affidavit, Rule 7.1 Statement, Ex-Parte Order and Writ of Maritime Attachment in this matter have already been sent to you in our previous letter dated February 13, 2008.

    Should you have any questions or concerns, please contact us at your convenience.

    This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

                    Very truly yours,

                    Nancy R. Siegel

nrp/bhs

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

WAM SINGAPORE PRIVATE LIMITE                   :

                       Plaintiff,     :     08 Civ. 0044(VM)

                                   :

   - against -                                 :     ECF CASE

                                   :

BALAJI COKE INDUSTRY PVT. LTD.,      :     **ORDER DIRECTING**
                                   :     **DEFAULT JUDGMENT**

                                   :

                    Defendant.      :

-------------------------------------------------------------X

      This action having been commenced on January 3, 2008 by the filing of a

Verified Complaint and accompanying documents, and a copy of all pleadings having

been served on the Defendant BALAJI COKE INDUSTRY PVT. LTD by February 23,

2008 by International Registered Mail, Return Receipt and Defendant not having

answered the Verified Complaint, and the time for answering the Verified Complaint

having expired, and

      The Plaintiff having moved by Motion for the recognition and enforcement of the

underlying arbitral award as a Judgment of this Court, pursuant to 9 U.S.C.§201 *et. seq.*

and having requested the attorneys' fees and costs incurred herein, and a copy of the

motion papers having been served on Defendant by FedEx courier or facsimile and

Defendant not having answered the motion, and the time for answering the motion having

expired;

IT IS HEREBY ORDERED, ADJUDGED and DECREED:  That the arbitral award be

recognized and enforced as a Judgment of this Court and Plaintiff have judgment against

Defendant in the amount of $_____.

Dated: New York, New York
        _____, \_\_, 2008

                          _____
                                U.S.D.J.

                 This document was entered on the docket on

                 _____.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

WAM SINGAPORE PRIVATE LIMITED,                    :

                      Plaintiff,                    :        08 Civ. 0044(VM)

                                :

    - against -                    :        ECF CASE

                                :

BALAJI COKE INDUSTRY PVT. LTD.,                    :

                                :

                Defendant.                    :

-------------------------------------------------------------X

## CLERKS CERTIFICATE OF DEFAULT

     I, Michael McMahon, Clerk of the United States District Court for the Southern District

of New York, do certify that that this action commenced on January 3, 2007 with the filing of the

Verified Complaint.

     Defendants have not filed an Answer, made an appearance or otherwise moved with

respect to the Complaint herein.  The default of the Defendants is therefore noted.

Dated: August ___|\_, 2008

                                   _J. Michael McMahon_

                                   Clerk of the Court

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

WAM SINGAPORE PRIVATE LIMITED,                    :

                      Plaintiff,          :          08 Civ. 0044(VM)

      - against -                                  :          ECF CASE

BALAJI COKE INDUSTRY PVT. LTD.,                   :

                 Defendant.          :

------------------------------------------------------------------X

## STATEMENT OF DAMAGES

Plaintiff seeks default judgment in the amount of $809,199.36. The total amount requested is based on the amount awarded in the Arbitration Award as well as Plaintiff's request for the attorney's fees and costs incurred herein. The damages claimed are as follows:

| | | |
|---|---|---|
| A. | Principal claim: | $623,387.25; |
| B. | Attorneys' fees of £9,725.00: | $18,186.24; |
| C. | Interest on principal claim and attorneys' fees at 7% compounded quarterly from August 23, 2006 through date of payment (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $148,635.55; |
| D. | Arbitrator's fees of £2,400: | $4,488.60 |
| E. | Interest on arbitrator's fees at 7.25% compounded quarterly from February 5, 2007 through date of reimbursement by Defendant (Plaintiff estimates date of enforcement/payment will be August 23, 2009): | $901.72 |
| F. | Expected Attorneys' fees and costs incurred in the instant action: | $13,600.00 |

**TOTAL**...................................................................... **$808,199.36.**

# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WAM SINGAPORE PRIVATE LIMITED,                            :
                                                         :
                              Plaintiff,                 :        08 Civ. 0044(VM)
                                                         :
            - against -                                  :        ECF CASE
                                                         :
BALAJI COKE INDUSTRY PVT. LTD.,                           :        **ORDER**
                                                         :
                              Defendant.                 :
------------------------------------------------------------------------X

Upon Plaintiff's application for an Order pursuant to CPLR 5230 and F.R.C.P.

Supp. Adm. B(3)(a) directing the garnishee banks to turn over Defendant BALAJI COKE

INDUSTRY PVT. LTD.'s funds, currently attached in the amount of $225,000.00

pursuant to an Ex-Parte Order of Maritime Attachment and Garnishment issued on

January 3, 2008, it is hereby ordered as follows:

All garnishees banks, including American Express Bank and Standard Chartered

Bank, shall turn over the funds of Defendant BALAJI COKE INDUSTRY PVT. LTD in

the amount of $225,000.00 which they are holding pursuant to the Ex-Parte Order of

Maritime Attachment and Garnishment issued on January 3, 2008 to Plaintiff's counsel,

or at Plaintiff's counsel's direction, forthwith.

SO ORDERED.

Dated: New York, New York
       August _____, 2008

                                        _____
                                                      U.S.D.J.